[No. 5039.    Decided December 30, 1904.]

*In the Matter of the Application of* JAMES C. BROAD *for a Writ of Habeas Corpus.*

JAMES C. BROAD, *Appellant*, v. E. M. WOYDT, *Chief of Police of the City of Spokane, Respondent.*[1]

LABOR — PUBLIC WORKS — EIGHT-HOUR DAY — CONSTITUTIONAL LAW—RIGHT OF CONTRACT. An ordinance prescribing an eighthour day, and forbidding the employment for longer hours of any laborer upon municipal construction work, making the same a part of all city contracts for such work, and providing a penalty for any violation thereof by any city contractor, is not unconstitutional as in conflict with the fourteenth amendment or any other federal or state constitutional provision, since the same relates only to public works, and the state has a right to do its work in any manner it sees fit, and no violation of private rights is involved.

Appeal from a judgment of the superior court for Spokane county, Richardson, J., entered October 16, 1903, dismissing a petition for a writ of habeas corpus, upon sustaining a demurrer thereto. Affirmed.

*Cullen & Dudley*, for appellant, contended, *inter alia*, that the ordinance was unconstitutional on the ground that it interferes with the private right of contract. *Se-*

[1]Reported in 78 Pac. 1004.

29-36 WASH.

*attle v. Smyth,* 22 Wash. 327, 60 Pac. 1120, 79 Am. St. 939; *Ex parte Kuback,* 85 Cal. 274, 24 Pac. 737; *Dennis v. Moses,* 18 Wash. 537, 52 Pac. 333, 40 L. R. A. 302; *In re Jacobs,* 98 N. Y. 98, 50 Am. Rep. 636; *People ex rel. Rodgers v. Coler,* 166 N. Y. 1, 59 N. E. 716, 82 Am. St. 605, 52 L. R. A. 814; *Bertholf v. O'Reilly,* 74 N. Y. 515, 30 Am. Rep. 323; *Palmer v. Tingle,* 55 Ohio St. 423, 45 N. E. 313; *Cleveland v. Clements Bros. Const. Co.,* 67 Ohio St. 197, 65 N. E. 885, 93 Am. St. 670, 59 L. R. A. 775; *Commonwealth v. Perry,* 155 Mass. 117, 28 N. E. 1126, 31 Am. St. 533, 14 L. R. A. 325; *Low v. Rees Printing Co.,* 41 Neb. 127, 59 N. W. 362, 43 Am. St. 670, 24 L. R. A. 702; *Braceville Coal Co. v. People,* 147 Ill. 66, 35 N. E. 62, 37 Am. St. 206, 22 L. R. A. 340; *Frorer v. People,* 141 Ill. 171, 31 N. E. 395, 16 L. R. A. 492; *Ramsey v. People,* 142 Ill. 380, 32 N. E. 364, 17 L. R. A. 853; *State v. Goodwill,* 33 W. Va. 179, 10 S. E. 285, 25 Am. St. 863, 6 L. R. A. 621; *Leep v. St. Louis etc. R. Co.* 58 Ark. 407, 25 S. W. 75, 41 Am. St. 109, 23 L. R. A. 264; *State v. Loomis,* 115 Mo. 307, 22 S. W. 350, 21 L. R. A. 789; *In re Morgan,* 26 Col. 415, 58 Pac. 1071, 77 Am. St. 269, 47 L. R. A. 52; *Butchers Union etc. Co. v. Crescent City etc. Co.,* 111 U. S. 746, 4 Sup. Ct. 652. The ordinance is not within the police power of the state. 1 Tiedeman's State & Fed. Control of Per. & Prop., §§ 1–5; Cooley's Const. Lim., pp. 706-8 (5th ed.); *People v. Gillson,* 109 N. Y. 389, 17 N. E. 343, 4 Am. St. 465; Potter's Dwarris on Stat. & Const. 458; *Lawton v. Steele,* 152 U. S. 133, 14 Sup. Ct. 499; *State v. Noyes,* 47 Me. 189; *Austin v. Murray,* 16 Pick. 121; *People v. Jackson etc. Road Co.,* 9 Mich. 284; *People v. Orange County Road etc. Co.,* 175 N. Y. 84, 67 N. E. 129. It can not be sustained on the ground that it refers only to municipal work; it cre-

ates a burden upon the citizen for the benefit of favored individuals. *Loan Asso. v. Topeka,* 20 Wall. 655; 2 Dillon, Munic. Corp., §§ 736-7 (3d ed.); Cooley, Taxation, 67-69, 76-80, 89, 90. It prevents the city from making the best terms possible in its contracts. *Atlanta v. Stein,* 111 Ga. 789, 36 S. E. 932, 51 L. R. A. 335; *Marshall & Bruce Co. v. Nashville,* 109 Tenn. 495, 71 S. W. 815; *People ex rel. Rodgers v. Coler, supra; Holden v. Alton,* 179 Ill. 318, 53 N. E. 556; *Adams v. Brenan,* 177 Ill. 194, 52 N. E. 314, 69 Am. St. 222, 42 L. R. A. 718; *Davenport v. Walker,* 68 N. Y. Supp. 161; *Berry v. Tacoma,* 12 Wash. 3, 40 Pac. 414; *Puget Sound Pub. Co. v. Times Printing Co.,* 33 Wash. 551, 74 Pac. 802. The following are parallel cases. *People ex rel. Rodgers v. Coler, People v. Orange County Road etc. Co.,* and *Cleveland v. Clements Bros. Const. Co., supra; Street v. Varney Elec. Supply Co.,* 160 Ind. 338, 66 N. E. 895; *Fiske v. People,* 188 Ill. 206, 58 N. E. 985, 52 L. R. A. 291; *Ex parte Kuback, supra; Frame v. Felix,* 167 Pa. St. 47, 31 Atl. 375, 27 L. R. A. 802.

*E. O. Connor,* for respondent.

DUNBAR, J.—This is an appeal from a judgment denying appellant's application for an order discharging him from custody, and remanding him to the custody of the chief of police. The appellant was arrested October 15, 1903, upon a warrant duly issued by the justice's court on a complaint charging appellant with violating ordinance No. A1114, as amended, of the ordinances of the city of Spokane. This ordinance, as passed January 7, 1902, was as follows:

"Ordinance No. A1114. An ordinance to establish the hours to constitute a day's work on all municipal construction, or such work done by contract or sub-contract,

and providing for the wages to be paid laborers employed in doing the same, and providing penalties for its violation.

"The City of Spokane does ordain as follows:

"§ 1. Hereafter eight hours in any calendar day shall constitute a day's work on any work done for the city of Spokane, subject to the conditions hereinafter provided.

"§ 2. Hereafter all laborers employed on municipal work, which is being done by contract or sub-contract, as in this ordinance specified, shall receive and be paid the sum of not less than two ($2.00) dollars for a calendar day's work of eight hours, which sum of two ($2.00) dollars shall be the minimum price paid to all day laborers hereafter employed to do the work hereinbelow specified.

"§ 3. All work done by contract or sub-contract on any building or improvements, or work on roads, bridges, streets, alleys, or buildings for the city of Spokane shall be done under the provisions of this ordinance: Provided, that in cases of extraordinary emergency, such as danger to life or property, the hours for work may be extended; but in such case the rate of pay for time employed in excess of eight hours of each calendar day shall be one and one-half times the rate of pay allowed for the same amount of time during eight hour's service. And for this purpose this ordinance is made a part of all contracts, sub-contracts or agreements for work done for the city of Spokane.

"§ 4. Any contractor, subcontractor or agent of contractor, foreman or employer, who shall violate the provisions of this ordinance shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in a sum not less than twenty-five dollars, nor more than two hundred dollars, or by imprisonment in the city jail for a period not less than ten days nor more than ninety days, or both such fine and imprisonment, at the discretion of the court.

"§ 5. This ordinance shall take effect and be in force ten days after its passage."

The complaint charged that, on the 12th day of October, 1903, the petitioner, James C. Broad, in violation of said ordinance No. A1114, as amended, "did then and there

unlawfully and wilfully permit one Martin Devereux to work and labor more than eight hours in one calendar day upon the Fourth Ward sewer system in the city of Spokane, Washington, which said work was being done upon said sewer for the city of Spokane, Washington, by said James C. Broad, under contract with the city of Spokane, Washington." A warrant for the arrest of petitioner was duly issued, and petitioner arrested. A writ of habeas corpus having been sued out, the respondent chief of police made return, setting up the complaint and warrant, and stating that, under and by virtue of said warrant, he held the petitioner in custody to appear and answer to said charge before the court. The petitioner duly excepted to the sufficiency of this return, upon the ground that the ordinance of the city of Spokane, under which the petitioner was held, was in conflict with the constitution of the United States, with the constitution and laws of the state of Washington, and was unreasonable. The court overruled the petitioner's exception to the sufficiency of the return, denied the petition, and ordered the petitioner remanded to the custody of the chief of police. From such order this appeal is taken.

The appellant makes several assignments of error, but they are all embraced in the proposition that the ordinance was in violation of the fourteenth amendment to the constitution of the United States, which provides that, "no state shall make or enforce any law which shall abridge privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property without due process of law or deny to any person within its jurisdiction the equal protection of the law;" of § 3, art. 1, of the constitution of the state of Washington, which provides that, "no person shall be deprived of life, liberty or property without due pro-

cess of law;" of § 7, art. 1 of the state constitution, which provides that no person shall be disturbed in his private affairs or his home invaded without authority of law; of § 12, art. 1, which provides that no law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations; of §§ 5 and 9, art. 7, which provide, respectively, that "no tax shall be levied except in pursuance of law; and every law imposing a tax shall state distinctly the object of the same to which only it shall be applied;" and "the legislature may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of property benefited. For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes, and such taxes shall be uniform in respect to persons and property within the jurisdiction of the body levying the same;" of § 7, art. 8, which provides that "no county, city, town or other municipal corporation shall hereafter give any money or property, or loan its money or credit, to or in aid of any individual, association, company or corporation, except for the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in, or bonds of, any association, company or corporation;" of § 4683, Bal. Code, with reference to jurisdiction of justices of the peace in criminal prosecutions; and of chapter 44, of the laws of 1903, with relation to public work to be performed in working days of eight hours each.

The principal contention of the appellant is that the ordinance is in violation of the fourteenth amendment of the constitution of the United States, and of similar provisions of the state constitution. It is earnestly con-

tended, and such is undoubtedly the general statement of
the law by the reported cases, that the right to contract
labor is a valuable right, and that any law that takes
that right away is obnoxious to the constitutional pro-
vision prohibiting the taking of property without due
process of law. These elementary propositions have been
so often discussed that it is not necessary to again enter
into their discussion here.

It is earnestly insisted by the appellant that this ques-
tion has been decided by this court in the case of *Seattle
v. Smyth,* 22 Wash. 327, 60 Pac. 1120, 79 Am. St. 939,
and that, unless that case is directly overruled, the judg-
ment in this must be reversed. It is true that this court,
in the case above mentioned, did hold that a city ordi-
nance which makes it unlawful for any contractor upon
any of the public works of a city to require or permit
any day laborer or mechanic to work more than eight
hours in any one calendar day, is unconstitutional, on the
ground that it interferes with the right of persons to
contract with reference to their services, where such ser-
vices are neither unlawful nor against public policy.
This was a brief per curiam opinion. It was stated
therein that we had not been cited to a single case wherein
the constitutionality of such ordinances had been sus-
tained, and a recurrence to the briefs in that case sus-
tains this statement in the opinion. In fact, the brief
of appellant did not discuss this question at all, but it
appears that the court below sustained a demurrer to the
complaint, on the ground that the ordinance was an en-
largement upon the powers granted by the city charter to
regulate the hours of labor of persons laboring upon
public contract work of the city; and this was the only
question that was discussed in appellant's brief. The
unconstitutionality of the ordinance was briefly men-

tioned in respondent's brief, and some cases cited, notably the case of *In re Morgan,* 26 Colo. 415, 58 Pac. 1071, upon which the court seems to have based its decision. The Colorado case, however, has since been overruled, in principle, by this court in *State v. Buchanan,* 29 Wash. 602, 70 Pac. 52.

The Colorado case is the radical type of cases holding such laws unconstitutional, and it held that laws of this character, even where they were made with reference to the health of the workmen employed, were in conflict with the constitution, and that, in the absence of a constitutional provision authorizing the legislature to single out workmen in underground mines and smelters, and restrict them as to the number of hours they shall work, such a law is unconstitutional as being class legislation; that it was not a valid exercise of police power to protect the public health, since the health of the miner alone, and not of the public at large, is its object. This case is in direct conflict with *Holden v. Hardy,* 169 U. S. 366, 18 Sup. Ct. 383, where the provision in the Utah statute providing that the period of employment of workmen in all underground mines or workings shall be eight hours per day, except in cases of emergency, etc., was sustained as not being inimical to the provisions of the fourteenth amendment to the constitution of the United States, by abridging the privileges or immunities of its citizens or depriving them of their property, or denying to them the equal protection of the laws.

In the case at bar, the ordinance which was violated was substantially identical with the act of the legislature, Laws 1899, p. 163, which provides:

"§ 1. Hereafter eight hours in any calendar day shall constitute a day's work on any work done for the state or any county or municipality within the state subject to conditions hereinafter provided.

"§ 2.  All work done by contract or sub-contract on any building or improvements or works on roads, bridges, streets, alleys or buildings for the state or any county or municipality within the state, shall be done under the provisions of this act; Provided, That in cases of extraordinary emergency such as danger to life or property, the hours for work may be extended, but in such case the rate of pay for time employed in excess of eight hours of each calendar day, shall be one and one-half times the rate of pay allowed for the same amount of time during eight hours' service.  And for this purpose this act is made a part of all contracts, sub-contracts or agreements for work done for the state or any county or municipality within the state.

"§ 3.  Any contractor, sub-contractor, or agent of contractor or sub-contractor, foreman or employer who shall violate the provisions of this act, shall be deemed guilty of misdemeanor and upon conviction shall be fined in a sum not less than twenty-five dollars nor more than two hundred dollars, or with imprisonment in the county jail for a period of not less than ten days nor more than ninety days, or both such fine and imprisonment, at the discretion of the court."

In this case it is stipulated that the contract for the municipal work, under which it was charged that the petitioner had permitted one of his employees to work for more than eight hours in one calendar day, contained the following provision:

"It is further agreed that the laws of the state fixing the hours constituting a day's work, approved March 18, 1899, and ordinance No. A1114, passed January 7, 1902, shall be a part of this contract."

It is insisted by the respondent that it would be unconscionable to allow the contractor, after having entered into this contract and based his bid upon the provisions of the ordinance with reference to the number of hours that laborers under the contract should be allowed to work, to

appropriate to himself the benefits accruing from a viola-
tion of his own contract; and there seems to be some justice
in this criticism, although in an action of this character it
may not be a pertinent argument.

But, whatever may be said of the correctness of *Seattle
v. Smyth, supra,* at the time it was rendered—and it may
be conceded, we think, that a majority of the tribunals be-
fore which this question has been brought have pronounced
such laws unconstitutional—yet the supreme court of the
United States, in the recent case of *Atkin v. Kansas,* 191
U. S. 207, 24 Sup. Ct. 124, 48 L. Ed. 148, decided
May 1, 1903, have passed, with no uncertain sound,
upon the identical question which is presented in this
case, and have held the law to be valid. An examina-
tion of the Kansas statute, upon which the defendant Atkin
was indicted, shows it to be, in substance, the same as our
statute and the ordinance in question. The complaint
charged that Atkin contracted with the municipal corpora-
tion of Kansas City to do labor on a certain boulevard,
and, having hired one George Reese to shovel and remove
dirt in execution of the work, did knowingly, wilfully,
and unlawfully permit and require him to labor ten hours
upon said work, there being no extraordinary emergency
arising in time of war, nor any necessity for him to labor
more than eight hours for the protection of property or of
human life, the statute providing that employees should
not work more than eight hours a day. And, as showing
that there was no element of the health of the citizens
involved in this case, it was stipulated that the labor per-
formed by Reese was healthful outdoor work, not dan-
gerous, hazardous, or in any way injurious to life, limb,
or health, and could be performed for a period of ten
hours during each working day of the week without in-
jury from so doing, and that the labor he was employed

to perform, and did perform, was in no respect or manner more dangerous to the health, or hazardous to life or limb or to the general welfare, of the said George Reese, or other persons doing such work, than the labor performed by persons doing the same kind of, or character of, work as the employees of contractors having contracts to do the same kind of work for private persons, firms, or corporations or as the servants of private persons, firms, or corporations. It was further stipulated that the work of shoveling and removing dirt for the construction of a pavement was, in all respects, the same whether the pavement be constructed for a city or other municipality, or for a private person, firm, or corporation. But the decision was based upon an entirely new theory of the law, namely, that it was a public work on which the contractor was engaged, and with reference to which he contracted; that the state, or the municipalities, through delegated powers from the state, had a right to do their work in any manner in which they saw fit, and that they had the same right to compel those with whom they contracted to perform the public work in the same manner, and that there was no question of violation of private right involved. In the discussion of the case, it is said:

"Whether a similar statute applied to laborers or employees in purely private work would be constitutional is a question of very large import, which we have no occasion now to determine or even to consider. Assuming that the statute has application only to labor or work performed by or on behalf of the state, or by or on behalf of a municipal corporation, the defendant contends that it is in conflict with the 14th Amendment. He insists that the Amendment guarantees to him the right to pursue any lawful calling, and to enter into all contracts that are proper, necessary, or essential to the prosecution

of such calling; and that the statute of Kansas unreason-
ably interferes with the exercise of that right."

And, after quoting the argument of counsel, the court
says:

"These questions—indeed the entire argument of de-
fendant's counsel—seem to attach too little consequence to
the relation existing between a state and its municipal
corporations. Such corporations are the creatures—mere
political subdivisions—of the state, for the purpose of
exercising a part of its powers. They may exert only
such powers as are expressly granted to them, or such
as may be necessarily implied from those granted. What
they lawfully do of a public character is done under the
sanction of the state. They are, in every essential sense,
only auxiliaries of the state for the purposes of local
government. They may be created, or, having been cre-
ated, their powers may be restricted or enlarged or alto-
gether withdrawn at the will of the legislature; the au-
thority of the legislature when restricting or withdraw-
ing such powers, being subject only to the fundamental
condition that the collective and individual rights of the
people of the municipality shall not thereby be destroyed.
. . . The improvement of the boulevard in question
was a work of which the state, if it had deemed it proper
to do so, could have taken immediate charge by its own
agents; for it is one of the functions of government to
provide public highways for the convenience and com-
fort of the people. Instead of undertaking that work
directly, the state invested one of its governmental agen-
cies with power to care for it. Whether done by the
state directly or by one of its instrumentalities, the work
was of a public, not private character. . . . whatever
may have been the motives controlling the enactment of
the statute in question, we can imagine no possible ground
to dispute the power of the state to declare that no one
undertaking work *for it or for one of its municipal agen-
cies* should permit or require an employee on such work
to labor in excess of eight hours each day, and to inflict
punishment upon those who are embraced by such regu-

lations and yet disregard them. It cannot be deemed a part of the liberty of any contractor that *he* be allowed to do double work in any mode he may choose to adopt, without regard to the wishes of the state. On the contrary, it belongs to the state, as the guardian and trustee for its people, and having control of its affairs, to prescribe the conditions upon which it will permit public work to be done on its behalf, or on behalf of its municipalities. No court has authority to review its action in that respect. Regulations on this subject suggest only considerations of public policy. And with such considerations the courts have no concern. If it be contended to be the right of every one to dispose of his labor upon such terms as he deems best,—as undoubtedly it is,—and that to make it a criminal offense for a contractor for public work to permit or require his employee to perform labor upon that work in excess of eight hours each day is in derogation of the liberty both of employees and employer, it is sufficient to answer that no employee is entitled, of absolute right and as a part of his liberty, to perform labor for the state; and no contractor for public work can excuse a violation of his agreement with the state by doing that which the statute under which he proceeds distinctly and lawfully forbids him to do."

It is a notable fact, in this connection, that the alleged constitutional right of the laborer to contract his labor at any price which seems to him desirable is not in this, or any other reported case, a claim urged by the laborer, but the earnest contention in his behalf is made by the contractors who are reaping the benefits of the violation of that contract in paying the laborer a less remuneration than he is entitled to under the statue. But, inasmuch as this is a case which is susceptible of being appealed to the supreme court of the United States, and inasmuch as that tribunal has passed squarely upon the questions involved in this case in favor of sustaining the judgment herein, this court feels it its duty to yield

allegiance to the doctrine announced by the supreme court of the United States.

There seems to us to be no virtue in any of the other contentions made by the appellant. The title to the act is sufficient; the ordinance was made under the authority of the law; and, not being obnoxious to any constitutional provision, either of the United States or of the state, the judgment will be sustained.

FULLERTON, C. J., and ANDERS, MOUNT, and HADLEY, JJ., concur.