[No. 7166. Decided April 24, 1908.]

J. A. JAMES, *Appellant*, v. THE CITY OF SEATTLE *et al.*, *Respondents*.[1]

MUNICIPAL CORPORATIONS—IMPROVEMENTS—ASSESSMENT FOR BENEFITS—LIMITATION—PETITION BY OWNERS. Under Laws 1903, p. 121, restricting the city council, in levying assessments for local improvements, to fifty per cent of the assessed value of the property benefited, except where a petition by three-fourths of the owners specifies "not to exceed a certain higher percentage," the term "percentage" is not to be given a technical meaning restricting the assessment to a fractional part of the assessed value; but an assessment may be made for two hundred per cent of the value, when petitioned for, if within the constitutional limit of the value of actual benefits conferred.

[1]Reported in 95 Pac. 273.

SAME—PROCEEDINGS—MODE OF VALUATION—GENERAL ASSESSMENT
AS BASIS. Upon a petition for an improvement limiting the levy for
benefits to two hundred per cent of the "assessed value," without
specifying that reference was made to the last valuation for general
taxation, it is proper to base the levy for benefits upon an assess-
ment made after the petition was filed and before the ordinance was
passed, if passed within a reasonable time.

SAME—PROCEEDINGS—PETITION OF OWNERS—CONDITIONS—EFFECT—
JURISDICTION. A condition, expressed in a petition for a local im-
provement, calling for certain things and providing a lien therefor
"so far as the same may be legally made a lien" is not a jurisdic-
tional one, rendering the proceeding nugatory; since if it could not
be legally done it was nevertheless the intention of the petitioners
that the improvements be made.

SAME — CONTRACTS —VALIDITY—BIDS—CONDITIONS—EFFECT. Con-
ditions named in proposals for bids upon a contract for a municipal
contract, requiring the contractor to excavate for private property
owners and to contract with them, do not render the proceeding
void unless it can be said as a matter of law that the conditions
necessarily increase the cost of the improvement.

SAME. Where the regrade of streets calls for a cut of fifty feet,
requiring abutting property to be sloped back, and, to be available,
to be graded to street level, a condition requiring the contractor to
contract with owners to excavate private property at the same price
as bid for the street work does not necessarily increase the cost of
the improvement to taxpayers, where it is not alleged to do so, as
a matter of fact, and therefore does not render the contract' void as
a matter of law.

SAME—PROCEEDINGS—MODE OF VALUATION—BASIS. The previous
assessment for general taxation controls the jurisdiction of the city
to order an improvement, regardless of the fact that part of the
property assessed is to be taken for widening the street; since such
portion must be paid for when taken.

Appeal from a judgment of the superior court for King
county, Albertson, J., entered October 7, 1907, upon sustain-
ing a demurrer to the complaint, dismissing an action to re-
strain the performance of a contract for local improvements.
Affirmed.

*L. T. Turner*, for appellant.

*Scott Calhoun* and *Peters & Powell*, for respondents.

MOUNT, J.—This action was brought by the appellant to restrain the respondents from carrying out a contract for excavating certain streets. The contract was let by the city of Seattle to its co-respondent, the Rainier Development Company. The defendants filed a general demurrer to the complaint. This demurrer was sustained by the court below. The plaintiff elected to stand upon the allegations of the complaint. The action was thereupon dismissed. He appeals.

The complaint shows, that the authority of the city council to order the improvement rests upon a certain petition signed by the owners of three-fourths of the property within the whole improvement district, under chapter 82 of the Laws of 1903, page 121; that the appellant is the owner of the real property abutting upon one of the streets to be improved; that he did not sign the petition therefor; that by the petition the owners of three-fourths of the property within the proposed district have attempted to confer upon the city council power to widen, alter, and change grades of certain named streets and to excavate such streets to the new grades, and to do other work incidental to such regrading and to assess the cost of these improvements against the property benefited thereby, provided the cost of such regrading and improvements incident thereto "shall not exceed two hundred per cent of the value of the real estate exclusive of improvements thereon within the district to be improved." The petition also states:

"Your petitioners do further respectfully represent that they sign this petition upon the following understanding, and do hereby agree to the following terms and conditions: . . . (2) The contract for the grading and regrading of the streets and avenues embraced in the above named district shall be let as a single contract; provided, that for the purpose of prosecuting such work said contract shall provide that said district shall be subdivided into three sub-districts, the boundaries of which shall be as follows: [Then follows the description of each sub-district.] The cost of grading and regrading the streets and avenues lying within the boundaries of each sub-district as hereinbefore described together

with the cost of all other work necessary or incidental to said grading and regrading shall be borne entirely by property lying within the limits of said sub-district respectively, so far as the same may be legally made a lien upon said property."

In this connection it should be stated that the complaint shows that, while the owners of three-fourths of the property within the district as a whole signed the petition, the owners of three-fourths of the property within the subdistrict in which the plaintiff's property is situated did not sign the petition. The petition contains the further condition that the city of Seattle, in entering into the contract for the performance of the work, shall insert therein a provision for and on behalf of and for the benefit of private property owners within the district to be assessed for this improvement who may desire said property to be excavated; that said owner shall have the right and privilege to demand that the contractor shall excavate said private property at the same time the abutting streets are excavated, and at a cost per cubic yard not to exceed the price bid by said contractor for excavating the streets and avenues, and that said contractor shall be required to enter into a contract with such private owners for the performance of such excavating "in accordance with the terms and conditions herein provided." It is further provided in the petition that all the signers of such petition will enter into such contracts with the contractor, "provided that said contractor shall accept in full satisfaction for private excavation a lien against said private property, payable at the option of the owners thereof, in cash upon monthly estimates made in general conformity with the monthly estimates made for the streets abutting said property. The said owner may elect to pay for such private excavation at the expiration of any period not exceeding ten years after the completion and acceptance of said work by the board of public works, with interest on deferred payments at the rate of seven per cent per annum, payable semiannually."

This petition was filed with the board of public works of the city on May 12, 1906. Thereafter, on December 3, 1906, the city council, by unanimous vote, passed an Ordinance No. 14,993, as follows, omitting the formal parts:

"Section 1.    That Third avenue and Third avenue produced, from Pine street to Cedar street; Fourth avenue, from Pine street to Cedar street; Fifth avenue, from Westlake avenue to Denny way; Olive street, from Stewart street to Westlake avenue; Stewart street, from Second avenue to Westlake avenue; Virginia street, from Second avenue to Westlake avenue; Lenora street, from Second avenue to Fifth avenue; Blanchard street, from Second avenue to Fifth avenue; Bell street, from Second avenue to Fifth avenue; Battery street, from the alley between Second avenue and Third avenue to Fifth avenue; Wall street, from the alley between Second avenue and Third avenue to Fifth avenue; and Vine street, from the alley between Second avenue and Third avenue to Fifth avenue; and the approaches to such streets and avenues for such distance back therefrom, not exceeding two hundred fifty-six (256) feet, as may be necessary to make proper and suitable approaches thereto, be improved by grading and regrading the same and by the construction of such temporary sewers and the alteration, removal, and reconstruction of the existing sewer system, as may be rendered necessary by the grading and regrading of said streets, avenues, and approaches, said improvement to be made in accordance with the stipulations and agreements contained in the property owners' petition therefor, being file No. 30060 of the records of the city of Seattle in the office of the comptroller of said city.    Said improvement to be made according to the plans and specifications prepared under the direction of the city engineer and on file in the office of the department of public works.    And that assessments be levied and collected upon all lots and parcels of land specially benefited by said improvement to defray the cost and expense thereof and local improvement district bonds be issued as hereinafter provided, and said assessment shall become a first lien upon all property liable therefor and for the payment of said local improvement district bonds as hereinafter provided.

"Section 2.    That there is hereby established a local improvement district to be designated as "Local Improvement

District No. 1345," which district is described as follows: All the property abutting, adjacent and approximate to said portion of said streets and avenues named and described in section 1 herein to such distance back from the marginal lines thereof as prescribed by the city charter, the property included within said local improvement district shall be deemed to be and shall be the property specially benefited by said improvement and the total cost and expense of the improvement herein ordered, including all necessary incidental expenses, shall be defrayed by collection of special assessments upon the property included in said local improvement district, which said assessment shall be made upon said property in all respects as provided by the laws of the state of Washington and the city charter and ordinances of the city of Seattle, and, together with interest to accrue upon the respective sums so assessed shall be collected as herein provided.

"Section 3.    That the mode of making payment for the said local improvement shall be the mode of 'payment by bonds,' as provided by an act of the legislature of the state of Washington entitled 'An act authorizing the issuance and sale of bonds by cities to pay for local improvement providing for the payment thereof and declaring an emergency,' approved March 14, 1899, and under the provisions of ordinance No. 5693, of said city, approved December 6, 1899. The provisions of this section shall apply only to the mode of payment of said assessment and shall not be construed as limiting the method of assessment to the plan provided by the charter of the city of Seattle or said ordinance 5693.

"Section 4.    That said improvement shall be made under the supervision of the board of public works, which board is hereby ordered to proceed with said improvement as soon as the bonds of said local improvement district shall have been issued and the improvement shall not be begun until said bonds are negotiated and sold unless the said contract for said improvement shall provide for the delivery of said bonds to the contractor in payment therefor: *Provided*, If the contract for said improvement shall be so made that the contractor constructing the same shall accept the bonds in payment thereof, the improvement may be commenced immediately after the execution of the contract: *Provided*, That if the contract for said improvement does not provide for the delivery of bonds to the contractor, said bonds shall be negotiated before said improvement shall be commenced and if

the bonds be not negotiated and the contract for said improvement shall provide that said bonds shall be delivered to the contractor in payment for such improvement, the board of public works shall provide for the delivery of any of said bonds during the progress of the work, as in its judgment it may deem safe and proper.

"Section 5. That provision shall be made by ordinance for the issuance of bonds of said local improvement district for the whole estimated cost of said improvement less the amount issued against lands of the United States, the city of Seattle, and less the amount paid upon the assessment prior to the time for the issuance of the bonds, and for their delivery to the contractor constructing the improvement in payment thereof or their negotiation and sale. Said bonds shall be payable in ten equal annual installments and shall bear interest at the rate of six per cent per annum payable annually upon all unpaid installments of said bonds.

"Section 6. This ordinance shall take effect and be in force from and after its passage and approval if approved by the mayor, otherwise it shall take effect at the time it shall become a law under the provisions of the city charter." Seattle Ordinance, No. 14,933.

Thereafter, pursuant to said ordinance, the board of public works called for bids and let a contract to the respondent Rainier Development Company, for said work, which said call for bids and the contract referred to the plans and specifications then on file in the office of said board, which plans and specifications contained the following stipulations and provisions:

"The said contractor agrees to all the stipulations and agreement as set forth in the property owners' majority petition now on file in the office of the city comptroller, said petition, stipulation and agreement being part of this contract so far as the same is in conformity with the laws of the state of Washington, the charter of the city of Seattle and the ordinances of said city. Said stipulations and agreements are as follows:"

Then follows the conditions of the petition set out above.

The complaint then alleges that the cost of the work provided for by the said contract and the amount required by

the said contract to be paid by the contractor therefor, is more than two hundred per cent of the authorized valuation of the lands (including the strips to be taken by the widening of the streets) in the assessment district, according to the assessed valuation thereof on the last annual assessment roll prior to the filing of said petition, but less than two hundred per cent and more than fifty per cent of the total assessed valuation of said property for general taxes, as the same appears upon the last assessment roll made for the levying of taxes prior to the passage of said ordinance.

The appellant contends that the contract is illegal because the statute does not confer upon the owners of three-fourths of the property in a proposed assessment district the right to fix a limit of assessment in excess of the value of the property. The statute referred to is as follows:

"It shall be lawful for any city of the first class to order any improvement, the cost of which is to be charged to abutting property, when said cost shall not exceed fifty per cent of the valuation of the real estate exclusive of improvements within the proposed improvement district according to the valuation last placed upon it for purposes of general taxation, when such improvement is ordered by a unanimous vote of the council of said city of the first class: *Provided*, That this limit may be exceeded when any improvement shall be petitioned for by the owners of three-fourths of the property to be assessed for said proposed improvement, and when such petition specifies not to exceed a certain higher percentage." Laws 1903, p. 121.

It is argued that the use of the word "percentage" denotes a fractional part, and therefore the legislature intended by the use of the word percentage to limit the petitioners to less than the whole value of the real estate. It seems clear by the context that the legislature intended to, and did, limit the council to improvements costing fifty per cent of the assessed value of the real estate to be improved when the improvement was ordered without a petition of the property owners, but expressly provided "that this limit may be exceeded when any

improvement shall be petitioned for by the owners of three-fourths of the property to be assessed." This clearly indicates that no limit was intended to be fixed by law in such cases. But the last clause leaves the limit to be fixed by the petitioners themselves so that, whatever may be the technical meaning of the word percentage, it is clear from the whole context of the section quoted that no technical meaning was to be given to the word percentage, and that no limit was fixed except in the case first named. Appellant states "if the statute means that the city council may, upon petition of the owners of three-fourths of the property, fix any limit, no matter how high, then the statute is unconstitutional as depriving a citizen of his property without due process of law." No authorities are cited to support this statement, and no further argument made thereon. The limit of the council above fifty per cent is fixed by the petition of the property owners, and the constitutional limit is the value of actual benefits conferred. 1 Cooley, Taxation (2d ed.), p. 623 *et seq.*; Abbott, Municipal Corporations, § 337 *et seq.*; Hamilton, Special Assessments, § 202 *et seq.; McNamee v. Tacoma*, 24 Wash. 591, 64 Pac. 791.

It is next argued that it was the intention of the petitioners to limit the assessment with reference to the last valuation placed upon the property for general taxation, which preceded the filing of the petition. The petition does not so recite, and the complaint shows that the ordinance was based upon the valuation last placed upon the property before the ordinance was passed. This valuation was fixed between the dates of filing the petition and the passage of the ordinance. We think this last valuation controls, particularly where the ordinance was passed within a reasonable time after the petition was filed.

It is next argued that the petition furnishes no jurisdictional basis for the improvement, because the conditions expressed in the petition render it nugatory. It is true the petition recites, that the petitioners "sign this petition upon

the following understanding and do hereby agree to the following terms and conditions." By condition second the petitioners require the contract for the entire district to be let as a single contract, "Provided, that for the purpose of prosecuting such work said contract shall provide that said district shall be subdivided into three subdistricts." The boundaries of each is then specially described, and it is further provided that "the cost of grading and regrading the streets and avenues lying within the boundary lines of each subdistrict as hereinbefore described, together with the cost of all work necessary or incidental to such grading and regrading, shall be borne entirely by the property lying within the limits of said subdistrict respectively, so far as the same may be legally made a lien upon the property." The whole provision specifies that the work of regrading all the streets shall be let as a single contract, and that for the purpose of prosecuting the work the contract shall provide that the district shall be divided into three subdistricts, and that "the cost of grading . . . within . . . each subdistrict shall be borne entirely by the property lying within the limits of said subdistricts respectively, so far as the same may legally be made a lien upon said property." If this could not legally be done, it was nevertheless the intention of the petitioners that the improvement should be made. The condition therefore was not a jurisdictional one. The third condition in the petition was to the effect that the city, on entering into the contract for the performance of the work, should insert a provision for and on behalf of and for the use and benefit of the property owners within the district, binding the contractor to excavate the private property of the petitioners to the new grade at the same cost per cubic yard as the price fixed for excavating the streets. The fourth condition was to the effect that the property owners might pay the contractor for private excavation in cash or in ten years after the completion of the work, the contractor reserving a lien on such private property. The city incorporated these two last named conditions in the

call for bids, and the contract was let accordingly. It is contended that the city was without authority to contract for private parties, and these provisions in the call for bids are to the manifest injury of the appellant. Unless it can be said, as a matter of law, that these conditions necessarily increased the cost of the improvement to the property owners, they do not render the contract void. Hamilton on Law of Special Assessments says, at § 452:

"As the very purpose of inviting proposals for public work is to give the property owner the benefit of the lowest price he may obtain by a free and unrestricted bidding it follows that conditions in the specifications or contract which restrict bidding or tend to increase the cost of the work will vitiate the entire proceedings. Where contracts for local improvements are required by law to be awarded to the responsible bidders offering to do the work for the lowest sum, any provision in the specifications tending to increase the cost and make the bids less favorable to the property owners is illegal and void. Such provisions are commonly restrictive of the hours of daily labor that men employed by the contractor may work, or forbidding the employment of Chinese or alien labor, or fixing the minimum rate of wages. Whatever form the restriction assumes will be disregarded by the courts, if the conditions increase the cost of the work to the taxpayers," etc.

We think it cannot be said, either as a matter of law or fact, that those conditions of the bid or contract in this case tended to increase the cost of the work to the taxpayer. It is common knowledge that large bodies of earth can be moved more cheaply per cubic yard than small bodies. It is conceded that some of the cuts for streets in this case are fifty feet deep, and that the private adjoining property must be sloped back by the contractor one foot for each foot in depth, and that the private adjoining property to be available must be graded to the level of the street. We think the contractor for the grading of the streets could do the public work cheaper where he knew he could do all or even a portion of the private work of the same kind adjoining, than if the private work were omitted. If this is correct, it follows that the conditions

named in the contract do not necessarily increase the cost to the taxpayer, but are a material benefit which he may avail himself of if he so desires. This condition therefore did not render the contract void as a matter of law. It is not alleged that they do so as a matter of fact.

Appellant also argues that there has been no valuation placed upon the property for general taxation within the proposed assessment district, for the reason that a part thereof is proposed to be taken for widening the streets, and the balance as a body by itself has never been assessed for general taxation. There is no merit in this contention. The city cannot take any part of the property without compensation, and the balance is liable to assessment for its value. The increased width of the streets will presumably add some value to the remaining property, but, in any event, the last valuation for general taxation controls the jurisdiction of the city to order the improvements.

We are of the opinion that the trial court properly sustained the demurrer, and the judgment is therefore affirmed.

HADLEY, C. J., CROW, ROOT, FULLERTON, RUDKIN, and DUNBAR, JJ., concur.