[No. 9964. Department One. May 31, 1912.]

## C. E. MALETTE, *Appellant*, v. THE CITY OF SPOKANE, *Respondent*.[1]

MUNICIPAL CORPORATIONS — IMPROVEMENTS — EXCESSIVE ASSESS-MENTS—ORDINANCES FIXING MINIMUM WAGE—REASONABLENESS. A contract under a city ordinance requiring all common labor on public works to be paid a minimum wage, which was at a rate of from fifty to ninety cents higher for eight hours labor than the wages paid in private employment, may be objected to by a property owner assessed for a special improvement as an arbitrary and unreasonable discrimination in favor of a class of citizens, and as improperly restricting competition or imposing an unwarranted burden by unreasonably increasing the cost of the work, where over fifty per cent of the cost of the improvement was for common labor; entitling the objecting owner to a reduction of the assessment figuring the labor at a reasonable wage.

SAME—COMPETITIVE BIDS. Such an ordinance conflicts with a charter provision requiring the contracts to be let upon competitive bids.

DUNBAR, C. J., dissents.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered July 1, 1911, overruling objections of a property owner to an assessment for a local improvement, upon appeal from the city council. Reversed.

*Voorhees & Canfield*, for appellant.

*A. M. Craven* and *Wm. E. Richardson*, for respondent.

CHADWICK, J.—In 1899 the legislature passed an act fixing the hours of labor upon public works, which provides that, "hereafter eight hours in any calendar day shall constitute a day's work done for the state or for any county or municipality within the state." Rem. & Bal. Code, § 6572. In 1903 it was provided that, "it is a part of the public policy of the state of Washington that all work" by contract or day labor, done "for it or any political subdivision cre-

[1]Reported in 123 Pac. 1005.

ated by its laws, shall be performed in work days of not more than eight hours each" (Rem. & Bal. Code, § 6575); and that all contracts for such work might be cancelled by the officers of the state, county, or city having supervision of such work, in case the statute was not observed (Rem. & Bal. Code, § 6576); and that the tenor if not the terms of the law be written in all contracts "as provided for in this act" (Rem. & Bal. Code, § 6577).

In furtherance of this policy, the city of Spokane, by Ordinance No. A4422, § 1, declared, "hereafter eight (8) hours in any calendar day shall constitute a day's work on any work done for the city of Spokane;" and § 2, that,

"Hereafter all laborers employed by the day on municipal work, either directly by the city, or by contractors, subcontractors, individuals, partnerships, associations or corporations, on all work for the city, shall receive and be paid not less than $2.75 for a calendar day's work of eight (8) hours. The provisions of this section shall apply to and govern all work done for the city of Spokane and all work for any individual, firm, partnership, association or corporation which is done under the direction or under the supervision of, or which is to be accepted by the city of Spokane or any officer or agent thereof."

The remainder of the ordinance is not material to our inquiry, except to say that it was provided that the ordinance should be a part of every contract thereafter to be entered into, and it became a part of the contract to which we shall presently refer. On March 10, 1910, the city passed Ordinance No. 5,016, wherein it is provided that hereafter "all work done by common laborers for the city of Spokane, or for any contractor, subcontractor or other person doing work by contract or otherwise for the city of Spokane, shall receive the sum of three dollars ($3) per day for eight hours' labor," etc.

On March 25, the city council passed an ordinance calling for the improvement of Sixteenth avenue, by constructing a sewer therein, creating an assessment district, and provid-

ing for the payment of the cost thereof by special assessments to be levied against the property benefited. A contract was thereafter let to one James C. Broad, who finished the work under his contract, and thereafter an assessment roll was prepared and notice given of the time and place for hearing objections. Appellant, being the owner of property affected, appeared and objected to the confirmation of the roll. His objections being overruled, he appealed to the superior court. From an adverse decision, he has brought this case to us for review.

The record shows, and we understand the fact is not denied, that at the time the contractor was compelled by his contract to pay $2.75 for common labor, and possibly three dollars, the court having refused to hear testimony as to that sum; that the going wages for that class of labor ranged from $1.85 to $2.25 for a ten-hour day; that fifty-nine per cent of the cost of the work was paid out for common labor, and that but for the ordinance the bid of the contractor would have been materially less.

That the legislature may fix the hours of labor upon all public works and for public work even in cities is now well settled, and no allusion to sustaining authority will be made. Indeed, that feature of the case is not challenged by appellant; but it is contended that, where the city is acting merely as an agent of the property owner, it is bound to do its work to his best advantage, and cannot empirically fix a wage and compel its payment by an independent contractor. Appellant bases his argument on two propositions; (1) that the ordinance is unreasonable, contrary to public policy, and oppressive; (2) that the assessment is in contravention of the constitution of this state and of the constitution of the United States, in that it takes the property of this appellant without compensation and without due process of law. Abandoning legal phraseology, the concrete question, put in plain English, is whether a city can improve the property of a citizen, either upon his petition or against

his will, and tax an arbitrary sum therefor that puts the
cost unreasonably above the cost of like work if done through
the instrumentality of a private agency.

It is insisted by the respondent city that this may be done,
under the authority of *In re Broad,* 36 Wash. 449, 78 Pac.
1004, 70 L. R. A. 1011; *Normile v. Thompson,* 37 Wash.
465, 79 Pac. 1095; *Gies v. Broad,* 41 Wash. 448, 83 Pac.
1025, and *Atkin v. Kansas,* 191 U. S. 207. In the first
case cited, the court held that an ordinance fixing the eight-
hour day was not an unconstitutional exercise of power,
since it related only to public works, and that no violation
of private contract was involved. The case of *Normile v.
Thompson* was controlled by *In re Broad.* The holding of
the court was the same, and the contractor was held bound
to pay the workman the amount he had agreed to pay in
his contract. The right of the property owner was in no
way involved. *Gies v. Broad* was a case where a laborer
brought suit to recover the difference between the amount
paid by the contractor and the amount agreed to be paid
in his contract. The property owner and his rights were
not considered, the sum of the court's holding being that
the contractor could not take a wage from a property owner
and convert it, or any part of it, to his own use. In this
opinion there is an expression which, although not neces-
sary to the decision, may, if taken without qualification, seem
to support the contentions of the respondent. It follows:

"The principle involved in that case [*Atkin v. Kansas,* 191
U. S. 207] is not distinguishable from the principle in-
volved in the case now before us. For, surely, if it be within
the power of the state to limit the number of hours a laborer
may be permitted to labor in one calendar day on any public
work undertaken by it, it can fix the minimum sum that
shall be paid him as wages for such labor. The power to do
either must rest on the principle that 'it belongs to the state,
as the guardian and trustee for its people, and having con-
trol of its affairs, to prescribe the conditions upon which it
will permit public work to be done on its behalf, or on behalf
of its municipalities.' "

We reaffirm our allegiance to the doctrine laid down in *Atkin v. Kansas,* but reference to that case will show that it does not touch the question at bar, nor does it remotely suggest the right of a city to fix an arbitrary wage and sustain it in the light of a showing like unto that made by the appellant in this case.

Laws fixing the hours of labor and providing that no less than the *going* rate of wages shall be paid under contracts such as we have before us have been generally upheld; but the question for us to decide is whether, as against a protesting property owner, a wage unreasonably higher than the going wage can be arbitrarily paid for work done under a special assessment. In disbursing funds so collected, a city council is bound to act for the best interests of those contributing to the fund. The city acts in its proprietary capacity. Its council is the agent of the property owner. In *Seattle v. Stirrat,* 55 Wash. 560, 104 Pac. 834, 24 L. R. A. (N. S.) 1275, we said:

"The power to grade streets, lay sewers or water pipes, and to lay the cost thereof upon abutting property is not a governmental or public function in the strict sense."

The city in such cases acts merely as an agent *ex necessitate;* for, while the burden is upon the individual to improve the street, the nature of the work is such that it must be done in some order and with some relation to the improvement of connecting thoroughfares, to the end that the scheme of development and improvement may be harmonious. Beyond a right to do this work against the will of the abutting owner and in accordance with plans of its own adoption, the right of the city has not been extended. To hold that a city could ignore the first principles of agency—that is, that an agent is bound to serve his master and promote his interest— would be to put a burden upon an involuntary principal that has so far been unknown to the law. The labor here involved is common labor, requiring no training or skill, the only re-

quirement being, to use the language of a witness, that the man shall have "a good strong back."

The duty of the city when acting as an agent is well defined in *James v. Seattle*, 49 Wash. 347, 95 Pac. 273. In that case a proceeding was brought by a property owner to restrain the city from contracting the work of excavating certain streets. Although the court found against the complainant on the facts, it nevertheless adopted the text of Hamilton on Law of Special Assessments, in which it is said:

"As the very purpose of inviting proposals for public work is to give the property owner the benefit of the lowest price he may obtain by a free and unrestricted bidding, it follows that conditions in the specifications or contract which restrict bidding or tend to increase the cost of the work will vitiate the entire proceedings. Where contracts for local improvements are required by law to be awarded to the responsible bidders offering to do the work for the lowest sum, any provision in the specifications tending to increase the cost and make the bids less favorable to the property owners is illegal and void. . . . Whatever form the restriction assumes will be disregarded by the courts, if the conditions increase the cost of the work to the taxpayers, . . ."

We are not disposed to go into the constitutional questions raised by appellant, nor to hold on the present hearing that the ordinance fixing a minimum wage would operate as a taking of property without due process of law; for this case can be disposed of by resort to simpler processes. Exercising, as it does, the legislative power of the state, the test of a municipal ordinance is its reasonableness; which is but another way of saying that a municipality cannot go beyond its delegated power, if it be a city organized under the statute. If it be a city of the first class operating under a freeholders' charter, it cannot, except in the exercise of its police power, or in the performance of strictly municipal functions, go beyond the zone of policy as declared by the state legislature; that is to say, in matters involving a public policy having no definite relation to either the police power

or the governmental functions of a municipality, a city is powerless to act. Here we have an ordinance saying, not that a sum no less than the going wage for like labor shall be paid, but that a fixed sum irrespective of going wages or the worth of the employee shall be paid. In the instant case, the wages paid are from fifty to ninety cents higher for eight hours than are wages paid in private employment for like labor for ten hours. To hold this arbitrary resolution to pay an excess of wages to be reasonable, reference to some fixed principle of law must be had. It would seem that no such reference can be had. Counsel for the city does not refer us to any, but puts his reliance upon the basis of policy alone, whereas we find ourselves confronted by two certain and immutable principles of law. Rejecting the question of policy, which neither the council nor this court has power to define, we are confronted by one of two premises. To sustain the ordinance we must hold, either that a city council has absolute power and dominion over the citizen and his property, or that it is bound to the observance of the law of principal and agent. It is safe to say that nowhere in the books will be found text or opinion sustaining the right of the city to act upon the one theory or to ignore the other. So far as we have been able to find, laws fixing a minimum of wages for unskilled labor have been uniformly condemned; sometimes as an attempt to exercise a power not warranted by the constitution, but always as an unjust discrimination in favor of a class of citizens; improperly restricting competition; or as imposing an additional or unwarranted burden upon taxpayers by increasing the cost of the work. In *Street v. Varney Electrical Supply Co.*, 160 Ind. 338, 66 N. E. 895, 98 Am. St. 325, 61 L. R. A. 154, a general law fixing a minimum wage to be paid unskilled labor employed upon any public work of the state, counties, cities, and towns, was held to be unconstitutional as well as unreasonable. Discussing the reasonableness of the statute, the court says:

"With regard to such contracts for the purchase of property or the employment of labor, counties, cities, and towns stand much upon the same footing as private corporations; and they cannot be compelled by an act of the legislature to pay for any species of property more than it is worth, or more than its market value at the time and in the place where it is contracted for. The power to confiscate the property of the citizens and taxpayers of a county, city, or town, by forcing them to pay for any commodity, whether it be merchandise or labor, an arbitrary price, in excess of the market value, is not one of the powers of the legislature over municipal corporations, nor the legitimate use of such corporations as agencies of the state. If an act compelled counties, cities, and towns to pay to all stone masons not less than $2 per perch for stone to be used on any public work, when the market price of stone was but $1.50 per perch, or to the brickmaker not less than $12 per thousand for brick, when brick of the same quality could be bought for $10 per thousand, or to the hardware merchant not less than six cents per pound for iron, when iron of the same quality could be had for four cents per pound, such legislation would shock every reasonable mind, and would be universally condemned as unwarranted and unconstitutional. For the same reasons, an act fixing the price of unskilled labor on all public works at not less than twenty cents an hour is a legislative interference with the liberty of contract by counties, cities, and towns, which finds no sanction or authority in the doctrine that counties, cities, and towns are municipal and political subdivisions of the state. . . . If the minimum price to be paid by municipal subdivisions of the state for unskilled labor on public works exceeds the rate at which such labor can be obtained by other persons at the same place, then the excess so paid for labor on public improvements is taken from the citizens assessed for such works, not by due process of law, but by a mere legislative fiat. The citizens of the state, who must, through assessments made upon their property, pay for the public works of counties, cities, and towns, are entitled to have such work done at such rate of wages as the local agents and official representatives of such municipal subdivisions of the state may be able to secure by contract. They cannot be required arbitrarily to pay higher wages than laborers employed on private works or improvements in their particular district demand, any more than they could

be compelled by similar legislation to pay a minimum rate of wages to laborers employed by them in their private business. If the minimum rate fixed by the statute exceeds the market value of such wages, the excess is a mere donation exacted under color of law from the citizens liable to assessment for the public improvement, and bestowed upon the unskilled laborer. Public revenues cannot be applied in this way. *McClelland v. State, ex rel.*, 138 Ind. 321; *State ex rel. v. City of Indianapolis*, 69 Ind. 375, 35 Am. Rep. 223; *Warner v. Curran*, 75 Ind. 309. . . . The laboring men of the state may, for some purposes, constitute a class concerning which particular legislation may be proper. This classification has been recognized and sustained in statutes requiring the payment of wages in lawful money of the United States, forbidding the assignment of future and unearned wages, and in similar acts. But no legal and sufficient reason can be assigned for placing unskilled labor in a class by itself for the purpose of fixing by law the minimum rate of wages at which it shall be employed by counties, cities, and towns on their public works. Why exclude the skilled mechanic from the benefit of the act? Why compel the payment of a higher rate of wages to the unskilled laborer than may be demanded by the skilled mechanic for more difficult and important work, requiring special training, experience, and a higher degree of intelligence? Unless the legislature has the power to fix the minimum rate of wages to be paid by counties, cities, and towns to carpenters, stone-masons, bricklayers, plumbers, and painters employed on local improvements, treating each trade as a separate class, it has not the power to enact laws fixing the compensation of unskilled laborers employed on similar works. No sufficient reason has been assigned why the wages of the unskilled laborer should be fixed by law and maintained at an unalterable rate, regardless of their actual value, and that all other laborers should be left to secure to themselves such compensation for their work as the conditions of supply and demand, competition, personal qualities, energy, skill, and experience, may enable them to do."

We have found but one case in which a city council undertook to fix a minimum wage by ordinance. In *Frame v. Felix*, 167 Pa. St. 47, 31 Atl. 375, 27 L. R. A. 802, an ordinance of the city of Reading, in which it was provided that "said

contractor shall not pay less for labor on the said work than $1.50 per day for every person employed," was considered, and the power to so ordain was denied. See, also, Dillon, Municipal Corporations (5th ed.), §§ 118, 808.

There is another ground which seems to the writer of this opinion to be controlling, although it is not suggested by counsel. The charter of the city of Spokane provides that contracts for work of the kind here undertaken shall be let upon competitive bids. It is also the policy of the state, as declared by the legislature, that all contracts for local improvements shall be done by contract upon like bids. In construing a statute, or determining its effect, reference must be had to all existing laws covering the same subject-matter. The same question that we have before us confronted the court of common pleas in Ohio. See, *State ex rel. Bramley v. Norton,* 18 Ohio Dec. 354. The court there said:

"Furthermore, does this provision of the ordinance conflict with the mandatory requirement of the statutory law of the state, that all contracts for municipal work shall be awarded the lowest responsible bidder."

The court there adopted the text of *Frame v. Felix, supra,* 31 Atl. 375, where it is said:

"All that I am bound to say or that is proper for me to say is that, by attempting to fix in the specifications, on the basis of which proposals were invited, the minimum rate of wages to be paid by the contractor, the water-works board has withdrawn from possible competition one of the essential elements of the work, every part of which it was required to submit to competition, . . . I am simply deciding that, in asking for proposals as to that work, and in framing its specifications therefor as the basis of such proposals, the water board had no right to fix in advance, any rate of wages to be paid by the contractor, whether it be too high or too low, and that, therefore, its past and intended action in the premises cannot be sustained."

We repeat that we are not passing upon the constitutional questions involved, and are not now prepared to hold, upon

an objection to the assessment roll, that such contracts would be void, or that the objection would not be deemed to be waived by nonobjectors.  But it would seem that an objecting property owner could avail himself of the privilege of insisting that the assessment should be based upon the legitimate cost of the work, where, as is shown in this case, the difference in the wages is unreasonably great, and has materially enhanced the cost of the improvement.  *James v. Seattle, supra.*  Neither are we passing upon the power of the legislature to prescribe a policy which would compel payment of an arbitrary wage in excess of the market price of labor.  That question is not before us.  Until such policy has been declared by controlling authority, courts cannot sanction a municipal by-law so subject to abuse as is the ordinance now before us.  If we are to abandon the test of reasonableness and of the agent's duty to his principal, there would be no bound to the power of those who for a season are given the privilege of disbursing the taxpayers' money, money that is not city nor public money, but money of the individual.  *Seattle v. Stirrat, supra.*  If a council can pay $3 when the current wage is $2.25, they can fix the price of commodities entering into the construction of a public work and provide that material must be purchased of certain persons or firms when the same commodity might be had of others at a less price.  Under such a system there would be no limit to the "discretion" of the city officers, who to serve personal or political ends might burden the taxpayer beyond the point of endurance.  In cases of this character it is well to recur to fundamental principles for our guidance, one of the most salutary of these being that all municipal ordinances shall be reasonable, to the end that a favor to one citizen shall not find sustenance in the burden of another.

The judgment of the lower court is reversed, with directions to make such adjustment of the assessment upon the property of the appellant as will eliminate the difference between the amount justly chargeable as wages at the rate of

$2.25 per day of eight hours, and the price paid by the contractor, whether it be $2.75 or $3, as the court may determine.

Gose, Crow, and Parker, JJ., concur.

Dunbar, C. J., dissents.