[No. 23851. Department One. June 25, 1932.]

H. J. Holton, *Appellant*, v. The City of Seattle, *Respondent*.[1]

*Allen, Froude, Hilen & Askren,* for appellant.

*A. C. Van Soelen* and *J. Ambler Newton,* for respondent.

Mitchell, J.—This is an appeal from an order of the superior court sustaining a general demurrer to a complaint and entering a judgment dismissing the action upon the refusal of the plaintiff to plead further.

Upon completion, by the city of Seattle and the state, of what is spoken of as the Aurora bridge across lake

[1]Reported in 12 P. (2d) 754.

Union in Seattle, it became necessary to construct approaches to it. The city provided for the improvements by separate ordinances relating to the respective approaches; which ordinances, for the purposes of this case, are practically identical, and which provide for the creation of local improvement districts for the payment, by the mode of "payment by bonds," of a portion of the sums to be expended chargeable against certain property alleged to be benefited by the improvements, one district, including the south approach and other adjacent streets, being created by ordinance No. 61828, as amended by ordinance No. 62194, and the other district by ordinance No. 62212. The ordinances provided that contracts might be entered into jointly and severally by the state of Washington and the city of Seattle with the contractor, for the performance of the work.

In short, it was provided by the ordinances and contracts pursuant thereto that the costs of the improvements should be paid by the state, the city, and by assessments upon property within the local improvement districts. The costs were distributed as follows: in one district, approximately one-third against the property in the local improvement district, and the remainder to be paid out of funds by the city from its bridge bonds, series "G-2," 1931 construction fund of the city, and the state of Washington; and in the other district, nearly one-fourth of the total cost against the property benefited, the remainder to be paid by the city and state, as in the first mentioned district.

After the passage of the ordinance and the amendatory one referred to, for the improvement at the south end of the bridge, the city and the state, as parties of the first part, entered into a contract with S. A. Moceri, Inc., as the party of the second part, for the doing of that work, by which contract it was agreed,

in substance, that the contractor would begin the work upon written notice by the city engineer and regularly prosecute the same, unless the city engineer or board of public works and director of highways gave written orders otherwise; that the first parties employed the contractor to provide material and to do the described work and complete the same within a time specified according to attached plans and specifications, and further agreed to employ the contractor to perform alterations and additions to the work as may be ordered and pay for the same under the terms of the contract, plans and specifications; that no one should be employed upon the work other than certain designated persons, without a permit from the board of public works and the director of highways.

Still further, it was alleged the city and the state were about to or had entered into a contract with the Northwest Construction Company, a corporation, for the doing of the work at the north end of the bridge, including the improvement of other adjacent streets, under ordinance No. 62212, the contract being in legal effect similar to the one with S. A. Moceri, Inc. Thereupon, the plaintiff, being the owner of real property within the assessment district, commenced this action questioning the right of the city to join the state in letting the contract to do the work under the ordinance, and seeking an injunction restraining the city from proceeding with the contract and from issuing any bonds in payment for the work thereunder, and that the ordinance and contract thereunder be declared illegal.

Two arguments on behalf of the appellant are made against the judgment. First, that it is beyond the power of the city of Seattle to enter jointly into a contract with the state for the doing of public work wherein the property of an individual is to be assessed

for the benefits—that is, for the city and the state, on one side, to enter into a contract with another to do such work.

In chapter 314, Laws of 1927, pp. 910, 911, the legislature appropriated $500,000 for the establishment of this bridge on condition, among others, that the city of Seattle or King county, or both, should also help financially. In chapter 231, Laws of 1929, p. 681, the legislature appropriated $1,000,000 additional and reappropriated the former $500,000, upon the same conditions as those expressed in the 1927 act. In chapter 135, Laws of 1931, p. 414, the legislature reappropriated the unexpended balance of the former appropriation, saying:

"*And provided further,* That any unexpended balance remaining after the completion of said bridge shall be applied by the director of highways for right of way, engineering and *construction of the Aurora Avenue Highway approaches to said bridge.*"

It has become common in expensive highway construction for the strong to assist the weak—the Federal government helps the state, and the state helps the counties and cities. The appropriation acts and the contract involved in this case contain no suggestion or attempt at interfering with or limiting the jurisdiction and power of the cities with respect to the management and control of its streets, including these bridge approaches; and the fact that the state, as such, nominally becomes a party with the city by which the contract for the construction is let to another, amounts to no more, under the circumstances of this case, than administrative cooperation in an important public work, the cost of which is met mostly by the state and the remainder by the city and benefited property, whose owners are represented by the city. · Such join-

ing of the state with the city in making the contract, does not question, nor is it beyond, the power of the city.

The second argument against the judgment is that the contract entered into by the city delegates its authority to a third person and, therefore, the contract is void. The ordinances creating the local improvement district under which the work is being done, were enacted under the provisions of the local improvement act contained in § 9352 *et seq.*, Rem. Comp. Stat.; § 9352 with reference to the power of a city to make local improvements to be paid by assessments on property specially benefited thereby, and § 9357 referring particularly to the improvement of streets, being especially applicable to the question now under consideration. Each ordinance, accordingly, provides in section one that the street or avenue, including the approach to the bridge, be improved by paving, etc., and in section two, that the costs shall be borne by special assessment on property specially benefited, except the portion to be paid by the state and the city.

More specifically, the argument on behalf of the appellant is that, to the extent the cost of improving streets is to be met by the local improvement district plan, the city acts as agent *ex necessitate* of the property owner (*Malette v. Spokane,* 68 Wash. 578, 123 Pac. 1005, Ann. Cas. 1913E 986), and that the city cannot delegate its authority as such agent as it has done in the present contract of the city and the state for the street improvement in question.

There is nothing, however, in the appropriation acts, the ordinances or the contract, that gives the state any power to collect from the property owners, or turn aside in any manner whatever those provisions of the local improvement act by which the city calls for and

acts upon competitive bids, spreads the assessments against the property benefited, and affords owners of the property opportunity to be heard concerning the amount of the assessments compared with the amount of the benefits bestowed on the property in the district. There is nothing in the plan or contract to the prejudice of the property benefited. On the contrary, it appears rather clearly that the total arrangement relieves the property within the improvement district of the greater part of the burden for a fine improvement.

True, the contract associates the state with the city as a party to the contract, and, in certain particulars, speaks of the relations of such parties to the contractee and the subject matter of the contract, but the plans and specifications which are made a part of the contract provide, among other things:

"The work embraced in the contract shall be under the supervision of the Director of Highways and of the City Engineer, *subject to the acceptance and approval of the Board of Public Works of the City of Seattle.*

"Wherever the term 'Director of Highways' or 'City Engineer' is used in these specifications, it shall be interpreted to mean the joint action of the Director of Highways of Washington and the City Engineer of Seattle. Whenever the term 'Board of Public Works' is used, it shall be interpreted to mean the joint action of the Director of Highways of Washington and the Board of Public Works of Seattle."

No special assessment tax or liability can be incurred against the property of appellant or others similarly situated without affirmative action and consent on the part of the city. We are not able to see in the contract any delegation of authority which, in any way, cripples the power of the city in observing and protecting the property rights of the appellant and

484

others similarly situated, under the local improvement act.

Judgment affirmed.

HERMAN, MAIN, MILLARD, and BEALS, JJ., concur.