[No. 17248.  Department Two.  June 13, 1922.]

N. F. JAHN *et al., Appellants,* v. THE CITY OF SEATTLE, *Respondent.*[1]

MUNICIPAL CORPORATIONS (153) — PUBLIC IMPROVEMENTS — MINIMUM WAGE—AUTHORITY TO FIX—ORDINANCES—VALIDITY. A city has power to prescribe a minimum wage for common labor on all public works and require contractors on local improvements to pay the rate of wages paid by the city on similar work, notwithstanding the same exceeds the going rate of wages on private contracts.

SAME (153)—MINIMUM WAGE—REASONABLENESS—POLICE POWER. The validity of ordinances fixing the minimum wage for common labor on public works does not depend on the exercise of the police power, nor upon the reasonableness of the rate fixed.

CONSTITUTIONAL LAW (32)—MUNICIPAL CORPORATIONS (153)—MINIMUM WAGE—DELEGATION OF POWER. It is not an unlawful delegation of legislative power for a city ordinance having prescribed a minimum and a maximum wage for common labor on city work, to provide that heads of the departments are authorized to fix wages within the limits fixed and that contractors on public works shall pay the same wages as paid by the city departments for similar work.

PARKER, C. J., dissents.

Appeal from a judgment of the superior court for King county, Frater, J., entered March 8, 1922, upon sustaining a demurrer to the complaint, dismissing an action for an injunction. Affirmed.

[1]Reported in 207 Pac. 667.

*Flick & Paul* and *Raymond G. Wright,* for appellants.

*Walter F. Meier, George A. Meagher,* and *Charles T. Donworth,* for respondent.

MACKINTOSH, J.—Appellants are contractors engaged in the performance of contracts for the city of Seattle on local improvement work, and they allege in their complaint against the city that they estimated their costs on the basis of $3.50 per day for common labor to be employed by them, and that, at the time of the execution of the contracts, there was in effect a charter provision of the city of Seattle, art. 23, § 2, of which reads as follows:

"Minimum Wage to be Paid on local or other improvement Work: Every contractor and sub-contractor performing any local or other improvement work for the City of Seattle, shall pay or cause to be paid to his employees on such work or under such contract not less than the current rate of wages paid by the City of Seattle for work of like character and in any event not less than two and seventy-five hundredths dollars ($2.75) per day. Such contractor and sub-contractor shall, on such work or under such contract, give preference to citizens of the United States who are heads of families. This article shall be enforced by the city council by ordinance. In case any provision of this section shall be held illegal and void the same shall not affect any other provision of this section."

At the same time there existed an ordinance, No. 38,415, in the following words:

"An Ordinance relating to contractors and sub-contractors performing work for the City of Seattle; to employees thereof and to the wages paid such employees, providing penalties for violations of this ordinance, and repealing all ordinances or parts thereof in conflict therewith. Be it ordained by the City of Seattle as follows:

"Section 1. Every contractor or sub-contractor performing any local or other improvement work for the City of Seattle, shall pay or cause to be paid to his employees on such work or under such contract not less than the current or prevailing wage paid by the City of Seattle for work of like character.

"Section 2. Such contractor or sub-contractor shall on such work or under such contract give preference to citizens of the United States who are heads of families.

"Section 3. Any contractor or sub-contractor who shall violate any of the provisions of this ordinance shall be deemed guilty of a misdemeanor and on conviction thereof shall be fined in any sum not exceeding one hundred (100) dollars, or imprisoned in the city jail for a term not exceeding thirty (30) days, or may be both fined and imprisoned.

"Section 4. All ordinances or parts thereof in so far as the same may be in conflict herewith, are repealed."

The city of Seattle had no ordinances fixing the wages of laborers employed by it, other than ordinances numbers 41,689 and 42,219, which were general salary ordinances of the various departments of the city, and which, so far as we are here concerned, provided that for common labor employed in the different departments, the heads of those departments should fix the amount of the wages, provided they did not exceed $4.75 per day for employees just entering the city's service, and $5.25 for those who had been in such service ninety days or more.

The complaint alleges that the charter provision and the ordinances numbers 38,415, 41,689 and 42,219 are unconstitutional and void; and further alleges that, during the year 1921, certain departments of the city of Seattle paid $4.75 per day for common labor, and by reason of the fact that the plaintiffs had been paying less than that amount they were being arrested by the

defendant, and that the defendant was threatening to make further arrests, which, if done, would irreparably injure the plaintiffs; further, that $4.75 is an unreasonable and unwarranted amount to be paid, and an injunction was sought against the city to prevent its prosecuting any criminal action against the plaintiffs for failure to pay the rate of $4.75 per day. To this complaint a demurrer was interposed, which was sustained, whereupon the plaintiffs appealed.

The briefs in this case have taken a wide range, but the fact is that the issue presented by the demurrer to the complaint is a very narrow one, and one which has already been determined by the decisions of this court. The question of the constitutionality of state statutes and city charter and ordinance provisions in regard to hours of labor, employment of aliens, and minimum wages upon municipal work has been passed upon many times, and the rule has been established that such provisions are constitutional, for the reason, as stated by the supreme court of the United States, in the case of *Atkin v. Kansas,* 191 U. S. 207, 24 S. Ct. 124, that:

". . . it belongs to the State, as the guardian and trustee for its people, and having control of its affairs, to prescribe the conditions upon which it will permit public work to be done on its behalf, or on behalf of its municipalities. No court has authority to review its action in that respect. Regulations on this subject suggest only considerations of public policy. And with such considerations the courts have no concern."

In other words, the state and the various municipalities within it have the right to say that public work shall be done in any manner, at any price, and upon any terms which they see fit to lay down. It is in the power of the state and of its subsidiary municipalities to say that public work shall not be done, or that it may be done, and in the latter case it can prescribe the terms

and conditions upon which it will allow it to be proceeded with. These are matters which the people have the right to determine for themselves without interference by the courts, after they have spoken their will, as here, by the adoption of a charter and the passage of ordinances by their legislative representatives. The courts will no more attempt to say what wages must be paid upon public work, what hours of employment shall prevail, or the class of people who shall perform that work, than they will attempt to interfere and prescribe the material to go into the work, the manner of construction or other engineering details of a public improvement. This we have said in the case of *Malette v. Spokane*, 77 Wash. 205, 137 Pac. 496, Ann. Cas. 1915D 225, 51 L. R. A. (N. S.) 686, where the whole subject of minimum wages upon public work is exhaustively considered. On the same principle, the supreme court of the United States, in *Heim v. McCall*, 239 U. S. 175, 36 S. Ct. 78, Ann. Cas. 1917B 287, and *Crane v. People of State of New York*, 239 U. S. 195, 36 S. Ct. 85, later upheld provisions relating to the non-employment of aliens upon public work. It is unnecessary to cite the large number of cases from Federal and state courts which have sustained this principle when considering the eight-hour law, minimum wages and alien employment provisions in regard to public work.

Counsel for appellants argue that, because of the fact that it is alleged in their complaint that the going rate of wages was less than that which they are being called upon to pay, the ordinances are invalid for the reason that they are unreasonable. This argument is fallacious, because the validity of statutes and ordinances similar to the one here under consideration does not depend upon the exercise of the police power. The police power, of course, must be exercised in a reasonable manner, but the right of the state and its munici-

palities to say upon what conditions a public work shall be or not be performed is not a right arising from the exercise of the police power, and therefore the question whether the ordinances in this case prescribe a reasonable rate of compensation does not enter into the discussion of the matter. In the case of *Malette v. Spokane, supra,* referring to this question of police power, we said:

"While cogent reasons might be advanced for sustaining legislation of this character as a proper exercise of the police power of the state, delegated by our constitution to cities of the state, we find it unnecessary to place the decision on that ground or to discuss that question; since the state courts to which we have referred and the supreme court of the United States have sustained legislation which cannot be distinguished, either in principle or in effect, from the ordinance here in question, upon the simple ground that 'it belongs to the state as the guardian and trustee for its people, and having control of its affairs, to prescribe the conditions upon which it will permit public work to be done on its behalf, or on behalf of its municipalities.' "

The cases cited by the respondent which have held unconstitutional the fixing of minimum wages, hours of work, etc., which are applicable to private contracts because the rates, hours, etc., have been held unreasonable have no applicability here. An entirely different question arises as to the fixing of hours, wages, etc., which shall obtain in contracts entered into for the performance of other than work of a municipality and that in the situation before us. In such cases the right of a legislative body to pass such acts depends upon the exercise of the police power, and, as we have often said, the attempt to exercise that power is always subject to review by the courts to determine whether the attempt is a reasonable one.

Appellants further argue that, although the provisions that the public contractor shall pay the going rate of wages paid by the city for similar work, and not less than $2.75 per day, are legal, yet the city council not having fixed by ordinances the wages which are to be paid by the city in its several departments, they are not bound to pay $4.75 a day, for the reason that that rate has been established by the heads of some departments only, and that this was an illegal attempt to delegate to those department heads the power to fix the rates of wages. An examination of the ordinances shows that the minimum wage for labor such as we have under consideration has been fixed at $2.75 per day, and that the maximum to be paid is $4.75 per day (with $5.25 for longer service), and that the heads of departments cannot pay less than the one amount nor more than the other. The provision of the charter is that the contractor upon public work shall pay the same wages as the departments pay. We cannot see how it can be said to be a delegation of the legislative power for the city council to say to the heads of the departments, "You pay your laborers an amount between $2.75 and $4.75 per day," without fixing the exact amount between those figures. This is nothing more than was sustained by this court in the case of *Larsen v. Rice,* 100 Wash. 642, 171 Pac. 1037, and *Spokane Hotel Co. v. Younger,* 113 Wash. 359, 194 Pac. 595, in which latter case we held that the legislature might delegate to the industrial welfare commission the power to determine the facts upon which the minimum wage law for women would become effective, and might specify the minimum wage and standard conditions for such labor. In that case the authorities are reviewed and a quotation is made from the case of *G. O. Miller Tel. Co. v. Minimum Wage Commission,* 145 Minn. 262, 177 N. W. 341, which is that:

''The Minimum Wage Commission is an administrative body. It does not determine hours of labor or prescribe conditions of employment or work out the rights of the employer and employee, except insofar as its fixing of a minimum wage under conditions prescribed by the statute has such effect. Legislative power is not delegated to it nor judicial power conferred upon it. It has the administrative authority which is conferred by the statute. In performing the duties with which it is charged it must be permitted to proceed in a practical way so as to accomplish the lawful results intended. It must be permitted to exercise judgment and discretion in working out the details of administration and establish some sort of administrative regulations. This does not mean that it has either delegated legislative or judicial power. The legislature determines the policy of the statute. The review by a court of the orders of the commission is limited to such as are made without jurisdiction, or under a mistaken interpretation of the law, or are so arbitrary and unreasonable that they deprive a party of guaranteed property rights.''

To the same effect is our recent opinion in *Vail v. Seaborg, ante* p. 126, 207 Pac. 15.

The validity of these ordinances, however, is not entirely dependent upon this reasoning, for it appears that the heads of city departments have no funds to pay laborers, the city council appropriates the money for that purpose and in accordance with the recommendations of the department heads, if it follows recommendations, or it fixes the appropriation itself, and in either event it in reality fixes the wages which are paid.

Some suggestion is made in the briefs that the plaintiffs were unable to determine what wages were being paid by the different departments, the departments, it being claimed, paying different wages for similar work. This question, however, is not before us, for the reason that no such allegation is found in the complaint, and it is therefore not incumbent upon us to pass upon it.

For the reason that the fixing of the minimum wage upon public work is constitutional, and for the further reason that power to fix that wage by the city of Seattle has not been delegated by the city council, but is being exercised by it, the lower court was correct in sustaining the demurrer to the complaint.

Judgment affirmed.

MAIN, HOLCOMB, and HOVEY, JJ., concur.

PARKER, C. J., dissents.