[No. 20864. Department One. April 14, 1928.]

## The City of Seattle, *Respondent*, v. Frank F. Hopkins, *Appellant*.[1]

[1] Municipal Corporations (153) — Public Improvements — Contracts—Minimum Wage—Violation of Ordinance. A conviction of violating an ordinance providing that every contractor on city work shall pay his employees thereon the current or prevailing wage paid by the city for work of like character, is not sustained by proof that accused paid his boilermakers $4.50 a day while other contractors for the city paid $7.50 a day, where it did not appear that the city had employed or paid any boilermakers or fixed any rate of wages for that class of work.

Appeal from a judgment of the superior court for King county, Griffiths, J., entered April 9, 1927, upon a trial and conviction of violating a city ordinance. Reversed.

*Bogle, Bogle & Gates* and *Edward G. Dobrin*, for appellant.

*Thomas J. L. Kennedy* and *Hugh R. Fullerton*, for respondent.

Mitchell, J.—Under its charter, the city of Seattle passed ordinance No. 38415, which provides:

"Section 1. Every contractor or subcontractor performing any local or other improvement work for the City of Seattle, shall pay or cause to be paid to his employes on such work or under such contract not less than the current or prevailing wage paid by the City of Seattle for work of like character."

Violation of the ordinance is made a misdemeanor punishable by fine or imprisonment.

Frank F. Hopkins was accused of violating the ordinance. In substance, the complaint was that on July

[1]Reported in 266 Pac. 192.

2, 1925, in Seattle, he, being a contractor or subcontractor performing improvement work for the city in the construction of a standpipe in Woodland Park in the city, employed upon the work as boilermaker's helpers, L. O. Powell and H. Roder, and unlawfully failed and refused to pay them the current or prevailing wage paid by the city of Seattle for work of like character, to wit, the sum of $7.50 per day. He has appealed from a judgment on a verdict against him.

Powell and Roder, as boilermaker's helpers, worked for the appellant and were paid by him $5.00 and $4.50 per day, respectively. Over objections of the appellant, the city showed that two other contractors engaged in construction work for the city during that year, commencing earlier than July 2, paid their boilermaker's helpers $7.50 per day, and upon that proof it is claimed that the city made out a case against the appellant. Incidentally it may be mentioned, there was no proof that the appellant knew what either of the other contractors was paying his boilermaker's helpers or that he knew those other contracts were being performed. The only specific or detailed provision in the contract between the city and the appellant, as to wages, was that the "contractor is hereby notified that the minimum current rate of wages paid by the city of Seattle for common labor for the year 1925 is $4.50 per day." The city contends and the evidence shows, however, that the labor of a boilermaker's helper is in a class above that known as or termed ordinary or common labor. There was no proof that the city had employed, or paid by warrant or otherwise, any boilermaker's helper employed by the other contractors, or any other boilermaker's helper, anything whatever at any time. In this situation the city closed its case, whereupon the court denied appellant's motion for a nonsuit.

The appellant then proved the negative of what the city should have shown affirmatively, if it would convict the defendant; that is, appellant proved that the city had never employed any boilermaker's helper; and meeting the city's proof, objected to by the appellant, the appellant proved by the secretary of the civil service commission of the city that the records of the commission show the classification and rate of pay of every individual ever hired by the city, and that if the city, during the years 1924 and 1925, had employed boilermaker's helpers, "we would have a record of it, and we have no such record"; that the city has no contact at all with employees of individual contractors; and that information as to what contractors on improvement work were paying their help could not be obtained at that office, but supposed it might be had at the comptroller's office or the department in charge of the particular improvement. The auditor in the comptroller's office testified that the records in that office did not show that any boilermaker's helper was paid by the city of Seattle in 1925 on either of the other two contracts referred to in the city's proof; that the city simply paid the contractors on their contracts as estimates therefor were filed. An assistant city engineer, connected with the office since 1912, testified that his advice, to one who wanted to find out the prevailing rate of wages paid in the city of Seattle, would be to go to the civil service department, that he didn't know of any other place where one could get that information. As already noticed, the secretary of that commission said that no rate had ever been fixed for that kind of work and that there was no record in that office of the city ever having employed or paid for such work. At the close of all the testimony, appellant's motion for a directed verdict was denied.

[1]   The theory of the city is that, because two other contractors were paid their contract prices and they in turn paid $7.50 per day to boilermaker's helpers employed by them in the performance of their contracts, therefore the appellant violated the ordinance, because he paid boilermaker's helpers only $5.00 and $4.50 per day in the performance of his contract. That view cannot be accepted. In a way, the consumer pays the tariff, the freight and the expenses of the delivery boy and wagon, but this ordinance which declares certain conduct to be criminal cannot be measured by that rule. The ordinance does not speak of the current or prevailing wage paid to employees by those who have contracts with the city, nor of the current or prevailing wage paid in the city, but it says "the current or prevailing wage paid *by* the city," etc. We agree with counsel for the city that it is not necessary to resort to the canons of construction to ascertain the meaning of the ordinance. It is as clear, certain and definite as words can make it. Counsel, however, on both sides have cited authorities which, upon examination, will be found of very little help, except in a most general way. In none of them is a similar statute under similar facts and circumstances presented or discussed.

Because the city contends that "with peculiar force, to the instant case, does the case of *State ex rel. Jahn v. Searing,* 120 Wash. 117, 207 Pac. 5, become applicable," we may examine that case. It was a *habeas corpus* case, original in this court, in which this same ordinance was involved. The only things decided in that case were, first, that the court in such proceedings cannot determine whether the ordinance violates the state or Federal constitutions, in view of Rem. Comp. Stat., § 1075 [P. C. § 8039], prohibiting inquiry as to the legality of any judgment of a court of competent jurisdiction, the party being held in custody; and

second, that a decision of the United States supreme court, that it will in *habeas corpus* determine the validity of an ordinance, is not binding upon this court as to its right to review such question because of the restriction contained in § 1075 of the code.

The city further says in its brief that the matters considered in *Jahn v. Seattle,* 120 Wash. 403, 207 Pac. 667, closely parallel the case at bar. We may notice the doctrine of that case, for in our opinion it strikes the true distinction. It was an appeal from a judgment sustaining a demurrer to the complaint and dismissing an action for an injunction. This ordinance was involved in that case and was held to be valid, but the plaintiff (appellant therein) was denied relief, because the matter involved was the wage for common labor paid by the contractor compared with, and less than, the wage actually paid *by* the city of Seattle for common labor, which latter, that is, the wage paid by the city for such class of labor, was, under ordinances of the city, fixed by the heads of the different departments wherein the labor was performed; it being held that the fixing of such wages by the heads of the different departments was not an unlawful delegation of power and moreover that the ordinances thus regulating and fixing wages were valid,

"... for it appears that the heads of city departments have no funds to pay laborers, the city council appropriates the money for that purpose and in accordance with the recommendations of the department heads, if it follows recommendations, or it fixes the appropriation itself, and in either event it in reality fixes the wages which are paid."

There is nothing of that kind in this case. There is no ordinance or rule by which the city, through the heads of its different departments, has fixed the wage to be paid boilermaker's helpers, nor has it employed

any through its departments or at all. There was a failure of proof on the part of the city in this case.

Reversed, with directions to dismiss the action.

MACKINTOSH, C. J., FRENCH, and PARKER, JJ., concur.