[Nos. 35289, 35290, 35291, 35292.   *En Banc.*   April 14, 1960.]

IVY PETERSON, *Respondent,* v. JERRY HAGAN, *as Director of the Department of Labor and Industries, et al., Appellants.*

KAUFFMAN BUICK COMPANY, INC., *Respondent,* v. JERRY HAGAN, *as Director of the Department of Labor and Industries, et al., Appellants.*

TOP-HAT CAFE, INC., *Respondent,* v. JERRY HAGAN, *as Director of the Department of Labor and Industries, et al., Appellants.*

DAVID L. REIFF *et al., Respondents,* v. JERRY HAGAN, *as Director of the Department of Labor and Industries, et al., Appellants.*[1]

[1]Reported in 351 P. (2d) 127.

50

The Attorney General, Herbert H. Fuller, Acting Chief Assistant, and Richard M. Montecucco, Assistant, for appellants.

McMicken, Rupp & Schweppe, for respondents.

William J. Millard, Jr., amicus curiae.

FOSTER, J.—This appeal consolidates four separate actions brought under the declaratory judgment statute (Laws of 1935, chapter 113, p. 305; RCW 7.24), challenging the constitutionality of Laws of 1959, chapter 294, p. 1411. Although the prayer sought to enjoin the enforcement of the entire act (Laws of 1959, chapter 294), only § 3 and § 5 were held unconstitutional.

The complaint in each case is substantially the same except that the respondents Reiff operate an employment agency; the respondent Kauffman Buick Company sells automobiles at retail; the respondent Peterson, doing business as Bellevue Sanatorium, operates a rest home for elderly persons and invalids; and respondent Top-Hat Cafe, Incorporated, operates a restaurant in Spokane. Each respondent alleged that no interstate commerce was involved and that, consequently, the Federal Fair Labor Standards Act (29 U.S.C.A., § 201 et seq.), was not applicable. This the appellants admit, both actually[2] and by their demurrer.

The demurrer of the appellants to each complaint was overruled, and the judgment in each case recites that the

---

[2]"There is no dispute in regard to the facts. Neither respondents nor their employees are engaged in interstate commerce or in a business or employment affecting interstate commerce. Each respondent is an employer who comes within the provisions of the act as to payment of the minimum wage and overtime benefits. Although respondents do not carry on the same or similar businesses, each is subject to the act and, unless it is held unconstitutional, must comply therewith." Appellants' brief, page 8.

defendants, who are appellants here, declined to answer. The matter was, therefore, determined upon the allegations of the complaints which contain the only factual matter here.

The trial court held that § 3 and § 5 of Laws of 1959, chapter 294, were unconstitutional, but that, because of the severability declaration of § 13, the remainder of the act was not affected. Our examination is likewise so limited.

While the appellants make five separate assignments of error,[3] the attorney general declares that such assignments involve only two questions, that is, the constitutionality of § 3 and the constitutionality of § 5. No other or additional question is raised or argued.

Each of the complaints alleged that the whole act contravened the due process clauses of the fourteenth amendment to the federal constitution and Art. I, § 3, of the state constitution. Each of the respondents made the further claim that the entire act contravened the equal protection clause of the fourteenth amendment to the federal constitution and Art. I, § 12 of the state constitution. The sweeping contentions were rejected by the superior court which decided only (1) that Laws of 1959, chapter 294, § 3, would, if enforced, violate the due process clause of the fourteenth amendment to the federal constitution and Art. I, § 3, of the state constitution and was, therefore, void; and (2) that Laws of 1959, chapter 294, § 5, which authorizes the Director of the Department of Labor and

---

[3]"1. The trial court erred in overruling the demurrer to each of the several complaints.

"2. The trial court erred in concluding that § 3 of the act constitutes a deprivation of liberty and property without due process contrary to the state and Federal constitutions.

"3. The trial court erred in passing upon the validity of § 5 of the act.

"4. The trial court erred in concluding that § 5 of the act constitutes an unlawful delegation of legislative power contrary to the 7th Amendment of the state constitution.

"5. The trial court erred in entering the judgments and permanently enjoining the enforcement of §§ 3 and 5." Appellants' brief, page 9.

Industries to promulgate rules, was an attempt to unlawfully delegate legislative power, and was void because it was in violation of the seventh amendment to the state constitution. Moreover, the enforcement of both sections was enjoined.

Here the respondents again urge propositions rejected by the superior court, and the right to do so is conceded by appellants. Specifically, it is claimed that § 3 is void because it is contrary to the equal protection provisions of the state and federal constitutions.

■ Because the respondents did not cross-appeal, appellants object to the respondents' additional arguments against the validity of the two sections, namely, that the proviso at the end of § 12 exempting persons subject to the federal fair labor standards act results in an unconstitutional discrimination in favor of employers in interstate commerce, which renders § 3 void, and that the exemptions contained in § 1(5) excluding a number of employments from the operation of § 3 constitute a further unconstitutional discrimination against them which renders § 3 void.

We think these objections without force because the respondents are not seeking any additional relief, but are only advancing additional arguments in support of the judgment.

A successful litigant need not cross-appeal in order to urge any additional reasons in support of the judgment, even though rejected by the trial court, but no additional relief will be granted on appeal in the absence of a cross-appeal. *Burt v. Heikkala,* 44 Wn. (2d) 52, 265 P. (2d) 280; *McUne v. Fuqua,* 42 Wn. (2d) 65, 253 P. (2d) 632; *State ex rel. P. U. D. No. 1 v. Schwab,* 40 Wn. (2d) 814, 246 P. (2d) 1081; *Latimer v. Western Machinery Exchange,* 40 Wn. (2d) 155, 241 P. (2d) 923; *Wilkins Ditch Co. v. Drake,* 115 Wash. 603, 197 Pac. 769. The same rule prevails in the United States supreme court. *Helvering v. Lerner Stores Corp.,* 314 U. S. 463, 86 L. Ed. 343, 62 S. Ct. 341.

The attorney general argues that the equal protection clause and the due process clause of the fourteenth amendment to the United States Constitution and Art. I, § 12, of the state constitution do not apply to legislation enacted

under the police power. This court itself has used such broad language in *Frach v. Schoettler*, 46 Wn. (2d) 281, 280 P. (2d) 1038; *Shea v. Olson*, 185 Wash. 143, 53 P. (2d) 615, 111 A. L. R. 998; *State ex rel. Lane v. Fleming*, 129 Wash. 646, 225 Pac. 647, 34 A. L. R. 500; *Fisher Flouring Mills Co. v. Brown*, 109 Wash. 680, 187 Pac. 399. But what was decided in each of those cases is that the legislation then under challenge was a proper exercise of the police power.

In considering such statements made in the course of judicial reasoning, one must remember that general expressions in every opinion are to be confined to the facts then before the court and are to be limited in their relation to the case then decided and to the points actually involved. *Cohens v. Virginia*, 19 U. S. 264, 5 L. Ed. 257; *State ex rel. Lemon v. Langlie*, 45 Wn. (2d) 82, 273 P. (2d) 464; *In re Levas' Estate*, 33 Wn. (2d) 530, 206 P. (2d) 482; *Gilmour v. Longmire*, 10 Wn. (2d) 511, 117 P. (2d) 187; *State ex rel. Todd v. Yelle*, 7 Wn. (2d) 443, 110 P. (2d) 162; *Ingham v. Harper & Son*, 71 Wash. 286, 128 Pac. 675.

We reject flatly the argument that the due process and equal protection clauses of the federal and state constitutions do not apply to statutes enacted in the exercise of the police power. Otherwise, the result would be a police state, and the legislative branch of the government would be omnipotent.

The United States supreme court specifically decided that police regulations were subject to the equal protection clause of the fourteenth amendment in *Atchison, Topeka & Santa Fe R. Co. v. Vosburg*, 238 U. S. 56, 59 L. Ed. 1199, 35 S. Ct. 675. The reasons for that conclusion were stated as follows:

". . . But we cannot at all agree that a police regulation is not, like any other law, subject to the 'equal protection' clause of the Fourteenth Amendment. Nothing to that effect was held or intimated in any of the cases referred to. The constitutional guaranty entitles all persons and corporations within the jurisdiction of the State to the protection of equal laws, in this as in other departments of legislation. It does not prevent classification, but does require that classification shall be reasonable, not arbitrary, and that it shall

rest upon distinctions having a fair and substantial relation to the object sought to be accomplished by the legislation. . . ."

In 1957, the Supreme Court of West Virginia in *State v. Memorial Gardens Development Corp.*, 143 W. Va. 182, 189, 101 S. E. (2d) 425, 429, held:

"All legislation under the police power must be within the constitutional inhibitions. *Milkint v. McNeeley*, 113 W. Va. 804, 169 S. E. 790; *Eubank v. City of Richmond*, 226 U. S. 137 [33 S. Ct. 76, 57 L. Ed. 156]. . . ."

We said the same thing in *Mitchell v. Consolidated School Dist.*, 17 Wn. (2d) 61, 135 P. (2d) 79, 146 A. L. R. 612, as follows:

". . . the police power—broad and comprehensive as it is—may not be exercised in contravention of plain and unambiguous constitutional inhibitions. (2 Cooley's Constitutional Limitations (8th ed.), p. 1229; *Jacobson v. Massachusetts*, 197 U. S. 11, 25, 49 L. Ed. 643, 25 S. Ct. 358; *State ex rel. Richey v. Smith*, 42 Wash. 237, 84 Pac. 851, 5 L. R. A. (N.S.) 674; *Wright v. Hart*, 182 N. Y. 330, 75 N. E. 404, 2 L. R. A. (N.S.) 338.)"

See, also, *Ralph v. Wenatchee*, 34 Wn. (2d) 638, 209 P. (2d) 270.

There is no relationship between the minimum wage act for women and children (Laws of 1913, chapter 174, p. 602 (RCW 49.12)), the constitutionality of which was sustained in *West Coast Hotel Co. v. Parrish*, 300 U. S. 379, 81 L. Ed. 703, 57 S. Ct. 578, 108 A. L. R. 1330, and the act in question, Laws of 1959, chapter 294, p. 1411. But since that decision and *United States v. Darby*, 312 U. S. 100, 85 L. Ed. 609, 61 S. Ct. 451, 132 A. L. R. 1430, sustaining the constitutionality of the Federal Wages and Hours Act, the right of the legislature to regulate hours and wages is not open to serious question.[4]

■ We start our examination of the proposition of whether § 3 of the act is a valid exercise of the police power on the hypothesis that the legislature may validly regulate

[4]*Lyons & Co. v. Corsi*, 3 N. Y. (2d) 60, 163 N. Y. S. (2d) 677, 143 N. E. (2d) 392. Contra, *Gasque, Inc. v. Nates*, 191 S. C. 271, 2 S. E. (2d) 36.

wages and hours of labor. *Seattle v. Smyth*, 22 Wash. 327, 60 Pac. 1120, to the contrary notwithstanding.

Because *Seattle v. Smyth, supra,* decided that a Seattle ordinance which prohibited any contractor upon public works to permit his employees to work more than eight hours in one calendar day was unconstitutional, respondents argue that a general statute regulating the terms of employment for all persons is unconstitutional. While respondents correctly state that this decision has never been expressly overruled, nevertheless, the opposite conclusion was reached by the court *en banc* in *Malette v. Spokane*, 77 Wash. 205, 137 Pac. 496, although a department of the court had previously decided otherwise (*Malette v. Spokane*, 68 Wash. 578, 123 Pac. 1005). Upon the authority of *Malette*, a Seattle ordinance fixing the wage rate of labor upon public works done by contract was sustained in *Jahn v. Seattle*, 120 Wash. 403, 207 Pac. 667. Indeed, the United States supreme court said in *Lincoln Fed. Labor Union v. Northwestern Iron & Metal Co.*, 335 U. S. 525, 536, 93 L. Ed. 212, 69 S. Ct. 251, 6 A. L. R. (2d) 473:

". . . That wages and hours can be fixed by law is no longer doubted since *West Coast Hotel Co. v. Parrish*, 300 U. S. 379; *United States v. Darby*, 312 U. S. 100, 125; *Phelps Dodge Corp. v. Labor Board*, 313 U. S. 177, 187."

It remains only to say that *Seattle v. Smyth, supra,* is now overruled.

■ It is helpful to an understanding of the problem to compare the present act with the earlier statute.

Laws of 1913, chapter 174, § 2, p. 602, contains a plain declaration of the legislative purpose that it is unlawful to employ women or minors under conditions detrimental to health or morals, or to employ women at wages not adequate for their maintenance. The legislature did not undertake to say what wages were inadequate to meet the declared legislative purpose but delegated such function to an administrative agency. In order to guarantee both constitutional and procedural due process, the administrative agency was authorized, by § 10, to make investigation in any "occupation, trade or industry" for the purpose of ascertaining

whether the wages paid in any such classification were inadequate or not.

By §§ 10 and 11, upon findings made upon evidence taken before a conference selected by a statutory formula, the administrative agency was authorized to determine adequacy of wages. Upon such findings, the commission was authorized, by § 11, to make an order as to the conditions of the employment and to fix the minimum wages to be paid in a particular industry.

That statute was not repealed by the 1959 act. It is therefore, clear that the minimum wage act of 1913 for women and children continues in full force and effect. No orders of that administrative agency are here for review.

The 1959 act is entirely different from the earlier one, and, we are told, follows the pattern of the federal fair labor standards act, 29 U. S. C. A., § 201 *et seq.*, which was sustained in *United States v. Darby, supra.*

For purposes of comparison, the 1959 statute does not contain any declaration of legislative purpose as did the 1913 minimum wage act for women and children. Laws of 1959, chapter 294, § 1(5), p. 1411, defines "Employee" but excludes agricultural labor and labor employed incidental to agriculture, domestic services, and executive, administrative, or professional services, and outside salesmen, without defining any such terms, leaving it to the director of the department of labor and industries to define such terms without let or hindrance. Several other exceptions are contained in the section.

The statute does not limit employment to eight hours a day or forty hours in a week, but permits unlimited and continuous employment beyond an eight-hour period providing the employee is paid time and one-half after eight hours in any one day, or forty hours in any one week. In view of the conclusions herein reached, a decision on this point is unnecessary.[5]

---

[5]An argument specifically directed against such provision was rejected in *Bunting v. Oregon,* 243 U. S. 426, 437, 61 L. Ed. 830, 37 S. Ct. 435, and in *Overnight Motor Transp. Co. v. Missel,* 316 U. S. 572, 86 L. Ed.

The Federal Fair Labor Standards Act expressly authorizes any state to apply its own law establishing a minimum wage higher than the federal minimum wage, or a lower maximum work week than that established by the federal act. The applicable section is set out in the margin.[6]

But the proviso of § 12 of the Laws of 1959, chapter 294, p. 1423, exempts employers covered by the federal act from the operation of § 3 of chapter 294 by declaring that any employer who has complied with the federal fair labor standards act shall be deemed to have complied with the state law. That proviso is:

"...  *Provided,* That as to any employer and employment which is subject to the federal fair labor standards act, compliance with such act shall be deemed likewise to constitute compliance with section 1(5)(c),·section 3, section 5 and section 7 of this act."

---

1682, 62 S. Ct. 1216. In the *Bunting* case, *supra,* the court gave the following reasons:

"...  It might not have been possible, it might not have been wise, to make a rigid prohibition. We can easily realize that the legislature deemed it sufficient for its policy to give to the law an adaptation to occasions different from special cases of emergency for which it provided, occasions not of such imperative necessity, and yet which should have some accommodation—abuses prevented by the requirement of higher wages. Or even a broader contention might be made that the legislature considered it a proper policy to meet the conditions long existent by a tentative restraint of conduct rather than by an absolute restraint, and achieve its purpose through the interest of those affected rather than by the positive fiat of the law."

[6]"No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under this chapter, and no provision of this chapter relating to the employment of child labor shall justify noncompliance with any Federal or State law or municipal ordinance establishing a higher standard than the standard established under this chapter. No provision of this chapter shall justify any employer in reducing a wage paid by him which is in excess of the applicable minimum wage under this chapter, or justify any employer in increasing hours of employment maintained by him which are shorter than the maximum hours applicable under this chapter." 29 U. S. C. A. § 218, p. 356.

Laws of 1959, chapter 294, § 3(1), p. 1413, is as follows:

"Except as otherwise provided in this section, no employer shall employ any of his employees for a workday longer than eight hours or for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed. Every employee is entitled to have his overtime computed on both a daily and weekly basis each week and shall be paid either his daily or weekly overtime whichever is greater."

Thus it is that Washington employers not within the terms of the federal fair labor standards act must pay to their employees overtime compensation after eight hours work in any one day, notwithstanding the fact that not more than forty hours have been worked in any one week. On the other hand, Washington employers who, from the accident of interstate commerce, are covered by the federal fair labor standards act are immune from any such restriction, and may employ persons for more than eight hours in any one day without payment of overtime provided the employment does not exceed forty hours in any one week.

Congress expressly granted the states the right to impose this restriction upon employers covered by the Federal Fair Labor Standards Act. But the legislature did not do so. Instead, it immunized employers covered by the federal act from state regulation and thus denied to small employers the equal protection of the laws.

Except for the accident of interstate commerce, employers engaged in identical businesses are not equally dealt with. One must pay its employees overtime for more than eight hours work in any one day, while the other is not so required to do. This is not classification or even an attempt at classification.[7] It is discrimination—no more, no less—and prohibited by the equal protection clause in Art. I., § 12 of the state constitution.

In *Washington Nat. Ins. Co. v. Board of Rev. of the N. J. Unemployment Compensation Comm.*, 1 N. J. 545, 64 A.

---

[7] *De Monaco v. Renton*, 18 N. J. 352, 113 A. (2d) 782.

(2d) 443, it was held that a section of the New Jersey unemployment compensation act was invalid because it created an arbitrary and discriminating classification. There was no valid reason to treat industrial life insurance agents differently from other industrial insurance agents. The New Jersey court held that the equal protection clause of the fourteenth amendment required all in the same class to be treated alike. The reasons are stated in the following paragraph:

"The equal protection clause means that the right of all persons must rest upon the same rule under similar circumstances, and that it applies to the exercise of all the powers of the state which can affect the individual or his property, including the power of taxation. *Louisville Gas & Electric Co. v. Coleman*, 277 U. S. 32, 48 S. Ct. 423, 72 L. Ed. 770 (1928). While the due process and equal protection guarantees are not coterminous in their spheres of protection, equality of right is fundamental in both. Each forbids class legislation arbitrarily discriminatory against some and favoring others in like circumstances. It is essential that the classification itself be reasonable and not arbitrary, and be based upon material and substantial distinctions and differences reasonably related to the subject matter of the legislation or considerations of policy, and that there be uniformity within the class. The equal protection of the laws means that no person or class of persons shall be denied the protection of the laws enjoyed by other persons or classes of persons under similar conditions and circumstances, in their lives, liberty, and property, and in the pursuit of happiness, both as respects privileges conferred and burdens imposed. *Hartford Steam Boiler Inspection & Insurance Co. v. Harrison*, 301 U. S. 459, 57 S. Ct. 838, 81 L. Ed. 1223 (1937); *Old Dearborn Distributing Co. v. Seagram-Distillers Corporation*, 299 U. S. 183, 57 S. Ct. 139, 81 L. Ed. 109 (1936); *Concordia Fire Insurance Co. v. Illinois*, 292 U. S. 535, 54 S. Ct. 830, 78 L. Ed. 1411 (1934); *Sproles v. Binford*, 286 U. S. 374, 52 S. Ct. 581, 76 L. Ed. 1167 (1932); *Kentucky Finance Corporation v. Paramount Auto Exchange Corporation*, 262 U. S. 544, 43 S. Ct. 636, 67 L. Ed. 1112 (1923); *Truax v. Corrigan*, 257 U. S. 312, 42 S. Ct. 124, 66 L. Ed. 254 (1921); *Smith v. Texas*, 233 U. S. 630, 34 S. Ct. 681, 58 L. Ed. 1129 (1914); *Atchison, Topeka & Santa Fe R. Co. v. Matthews*, 174 U. S. 96, 19 S. Ct. 609, 43 L. Ed. 909 (1899). This includes equality of exemption from liabilities. *Cotting v.*

*Kansas City Stock Yards Company, Etc.,* 183 U. S. 79, 22 S. Ct. 30, 46 L. Ed. 92 (1901)."

Similarly, in 1957, the supreme court of New Mexico in *Burch v. Foy,* 62 N. M. 219, 308 P. (2d) 199, held to be in violation of the equal protection clause a provision of the wages and hours act of that state which required variety store employees to be paid a minimum wage of seventy-five cents an hour but which permitted drug store employees doing similar work to be paid only fifty cents an hour. That court stated its reasons as follows:

"Passing then to the question of classification, we reach really the crucial point of the case. We have endeavored to give this subject the most careful thought and investigation, but have been unable to convince ourselves that the at-tempted classification in this law answers the requirements of legal and constitutional classification, i.e., equal protection of the law. It is an old expression that classification, in order to be legal, must be rational; it must be founded upon real differences of situation or condition, which bear a just and proper relation to the attempted classification, and reason-ably justify a different rule. State v. Henry, 37 N. M. 536, 25 P. 2d 204, 90 A. L. R. 805; 12 Am. Jur., Constitutional Law, Sections 476 and 481.

"It is well settled that there may justly be classification between employer and employee; each may be made a class, and a different rule applied, because there are differences of situation and in the considerations applicable to the various classes. But while classification is proper, there must always be uniformity within the class. If persons under the same circumstances and conditions are treated differently, there is arbitrary discrimination, and not classification. State v. Henry, supra. It is claimed that such is the effect of the present law, and we can see no escape from the conclusion.

"Under the provisions of section 3(a)(1) of the act the plaintiff is required to pay his employees the minimum wage of 75¢ per hour. On the other hand his competitors' employees, because they work in drug stores, whether they serve food and drink for consumption on the premises or not, are declared to be 'service employees' and need only be paid 50¢ per hour. Thus, appellee's competitors obtain a competitive advantage because they are entitled to pay a lower minimum wage to its employees performing the same functions as in direct competition with appellee's employees.

"We are of opinion that the Act under consideration constitutes class legislation of the most objectionable kind insofar as it refers to drug store employees. The classification is arbitrary and oppressive and without any valid reason for its basis."

Not without significance is the 1957 decision of the United States supreme court in *Morey v. Doud*, 354 U. S. 457, 1 L. Ed. (2d) 1485, 77 S. Ct. 1344, holding the provision of the Illinois community currency exchange act which exempted money orders issued by the American Express Company from regulation to be in violation of the equal protection clause. The United States supreme court said:

"Of course, distinctions in the treatment of business entities engaged in the same business activity may be justified by genuinely different characteristics of the business involved. This is so even where the discrimination is by name. But distinctions cannot be so justified if the 'discrimination has no reasonable relation to these differences.' . . .

"The principles controlling in the *Smith* and *Hartford Co.* cases, *supra* [*Smith v. Cahoon*, 283 U. S. 553, 75 L. Ed. 1264 51 S. Ct. 582; *Hartford Co. v. Harrison*, 301 U. S. 459, 81 L. Ed. 1223, 57 S. Ct. 838], are applicable here. The provisions in the Illinois Act, such as those requiring an annual inspection of licensed community currency exchanges by the State Auditor, make it clear that the statute was intended to afford the public *continuing* protection. The discrimination in favor of the American Express Company does not conform to this purpose. The exception of its money orders apparently rests on the legislative hypothesis that the characteristics of the American Express Company make it unnecessary to regulate their sales. Yet these sales, by virtue of the exception, will continue to be unregulated whether or not the American Express Company retains its present characteristics. On the other hand, sellers of competing money orders are subject to the Act even though their characteristics are, or become, substantially identical with those the American Express Company now has. . . ."

■ Laws of 1959, chapter 294, § 5, p. 1418, is as follows:

"For any occupation, the director shall make and revise such administrative regulations, including definitions of terms, as he may deem appropriate to carry out the purposes of this act or necessary to prevent the circumvention or evasion thereof and to safeguard the minimum wage rates

thereby established. Such regulations may include, but are not limited to, regulations defining and governing learners and apprentices, their number, proportion, and length of service; part-time pay; bonuses; overtime pay; special pay for special or extra work; and permitted charges to employees or allowances for board, lodging, apparel, or other facilities or services customarily furnished by employers to employees."

The respondents alleged in their complaints that this section was void because it violated the seventh amendment to the state constitution by attempting to delegate legislative power to the appellant director of the department of labor and industries. We agree. The act is devoid of any declared legislative purpose. No standards for the promulgation of rules are to be found anywhere in the statute. The vice of the challenged section is that it fails to distinguish between intrinsic legislative power and administrative rule-making power to execute a declared legislative purpose. Administrative rule-making power must be circumscribed by definite standards. Here there is an undisguised attempt at delegation of pure legislative power. The constitution forbids.

We recently had occasion to consider the constitutional power of the legislature to delegate rule-making power to an administrative agency. What we said in *State v. Gilroy,* 37 Wn. (2d) 41, 44, 221 P. (2d) 549, controls here. The statement is:

"The Washington constitution, Art. II, § 1,⊛ vests the legislative power in the Senate and House of Representatives. What Chief Justice Hughes said in *Panama Refining Co. v. Ryan,* 293 U. S. 388, 421, 79 L. Ed. 446, 55 S. Ct. 241, concerning the national legislature, is equally applicable to the state legislature. We quote:

" 'The Congress manifestly is not permitted to abdicate, or to transfer to others, the essential legislative functions with which it is thus vested. Undoubtedly legislation must often be adapted to complex conditions involving a host of details with which the national legislature cannot deal directly. The Constitution has never been regarded as deny-

⊛Superseded by the seventh amendment to the Washington constitution, adopted in 1912.

ing to the Congress the necessary resources of flexibility and practicality, which will enable it to perform its function in laying down policies and establishing standards, while leaving to selected instrumentalities the making of subordinate rules within prescribed limits and the determination of facts to which the policy as declared by the legislature is to apply. Without capacity to give authorizations of that sort we should have the anomaly of a legislative power which in many circumstances calling for its exertion would be but a futility. But the constant recognition of the necessity and validity of such provisions, and the wide range of administrative authority which has been developed by means of them, cannot be allowed to obscure the limitations of the authority to delegate, if our constitutional system is to be maintained.'

"Mr. Justice Cardozo, who dissented, conceded that

" ' . . . to uphold the delegation there is need to discover in the terms of the act a standard reasonably clear whereby discretion must be governed.'

"In the *Panama Refining Co.* case, *supra,* and in *Schechter Poultry Corp. v. United States,* 295 U. S. 495, 79 L. Ed. 1570, 55 S. Ct. 837, 97 A. L. R. 947, are found a detailed discussion and an explanation of the distinction between valid and invalid regulatory legislation. The principle is therein laid down that a law is invalid when the authority delegated leaves the regulatory or enforcement agency with unguided and unrestricted discretion in the assigned field. Stated affirmatively, the method of regulation by delegation of authority is subject to the limitation that the law providing for the delegation must also prescribe an accompanying rule of action or lay down a guide or standard whereby the exercise of discretion may be measured. *State ex rel. Washington Toll Bridge Authority v. Yelle,* 195 Wash. 636, 643, 82 P. (2d) 120; *Ferretti v. Jackson,* 88 N. H. 296, 188 Atl. 474, 478."

See, also, *State v. Northwestern Electric Co.,* 183 Wash. 184, 49 P. (2d) 8, 101 A. L. R. 189.

Recently the supreme court of Oregon reached the same conclusion, and said in *Demers v. Peterson,* 197 Ore. 466, 254 P. (2d) 213:

"From a reading of the sections of the law hereinbefore quoted, the department, as well as the State Board of Aeronautics, has the unlimited power to make regulations to carry out the provisions of the act so long as they do not conflict

with the laws of the state or the federal government. Beyond this, the sky is the limit. There is no suggestion in the title of the act or in the act itself of the nature, extent or character of the regulations. It would appear that the department has carte blanche authority, beyond the limitation above mentioned, to formulate any regulations which it sees fit. Under a blanket authority the rule-making bodies or their directors could conjure up from their fancies or imaginations any regulation which might come to mind. For a violation thereof, the licensee could be fined, imprisoned and have his license revoked.

"We hold that the above sections of the act relating to the rule-making power are unconstitutional in that the act contains no rule or standard fixed for the guidance of the administrative bodies in that respect."

The principle is so firmly embedded in American constitutional law that we refrain from collecting the myriad of cases in other states.

■ The attorney general argues that, because Laws of 1959, chapter 294, § 8, p. 1420,[9] provides for a judicial review of any administrative order, a different rule should apply.

---

[9]Laws of 1959, chapter 294, § 8, p. 1420:

"(1) As new regulations or changes or modification of previously established regulations are proposed, the director shall call a public hearing for the purpose of the consideration and establishment of such regulations following the procedures used in the promulgation of standards of safety under RCW 49.16.080, 49.16.090 and 49.16.100, as amended.

"(2) Any interested party may obtain a review of the director's findings and order in the superior court of county of petitioners' residence by filing in such court within sixty days after the date of publication of such regulation a written petition praying that the regulation be modified or set aside. A copy of such petition shall be served upon the director. The finding of facts, if supported by evidence, shall be conclusive upon the court. The court shall determine whether the regulation is in accordance with law. If the court determines that such regulation is not in accordance with law, it shall remand the case to the director with directions to modify or revoke such regulation. If application is made to the court for leave to adduce additional evidence by any aggrieved party, such party shall show to the satisfaction of the court that such additional evidence is material, and that there were reasonable grounds for the failure to adduce such evidence before the director. If the court finds that such evidence is material and that reasonable grounds exist for failure of the aggrieved party to adduce such evidence in prior proceedings, the court may remand the case to the director with directions that such additional evidence be taken

The fallacy of this argument is that there is no standard by which a court can measure any rule of the director. It is an unbridled discretion in violation of the seventh amendment to the state constitution.

The attorney general argues that, as far as Laws of 1959, chapter 294, § 5, p. 1418, is concerned, any challenge to its constitutionality is presently premature because the director has not yet made any orders. This does not avail because the constitutionality of a statute must be determined by what can be done under it rather than by what has been done. The constitution guards against the chances of infringement. The supreme court of Virginia recently said:

"We have said more than once that the test of the constitutional validity of a law is not what has been done under it, but what may by its authority be done. *Violett v. Alexandria*, 92 Va. 561, 574, 23 S. E. 909, 913, 53 Am. St. Rep. 825, 31 L. R. A. 382; *Southern Ry. Co. v. Commonwealth*, 107 Va. 771, 777, 60 S. E. 70, 72, 17 L. R. A. (N.S.) 364; *Richmond v. Carneal*, 129 Va. 388, 106 S. E. 403, 14 A. L. R. 1341." *Edwards v. Commonwealth of Virginia*, 191 Va. 272, 60 S. E. (2d) 916.

Accord: *Demers v. Peterson, supra; Bowie v. Town of West Jefferson*, 231 N. C. 408, 57 S. E. (2d) 369; *Herr v. Rudolf*, 75 N. D. 91, 25 N. W. (2d) 916, 169 A. L. R. 1388; *United Community Services v. Omaha Nat. Bank*, 162 Neb. 786, 77 N. W. (2d) 576; *Appeal of Sleeper*, 147 Me. 302, 87 A. (2d) 115; *Babb v. Bullitt*, 310 Ky. 211, 220 S. W. (2d)

before the director. The director may modify the findings and conclusions, in whole or in part, by reason of such additional evidence.

"(3) The judgment and decree of the court shall be final except that it shall be subject to review by the supreme court as in other civil cases.

"(4) The proceedings under this section shall not, unless specifically ordered by the court, operate as a stay of an administrative regulation issued under the provisions of this act. The court shall not grant any stay of an administrative regulation unless the person complaining of such regulation shall file in the court an undertaking with a surety or sureties satisfactory to the court for the payment to the employees affected by the regulation, in the event such regulation is affirmed, of the amount by which the compensation such employees are entitled to receive under the regulation exceeds the compensation they actually receive while such stay is in effect."

394; *Peter Kiewit Sons' Co. v. County of Douglas*, 161 Neb. 93, 72 N. W. (2d) 415; *Wilson v. Okla. Tire & Supply Co.*, 211 Ark. 77, 199 S. W. (2d) 328; *City of Los Angeles v. Lewis*, 175 Cal. 777, 167 Pac. 390; *State v. Evans*, 73 Idaho 50, 245 P. (2d) 788; *General Outdoor Advertising Co. v. Goodman*, 128 Colo. 344, 262 P. (2d) 261.

Moreover, § 5 is void on its face so that the least exercise of the power which the legislature attempted to delegate would be void. *Ajax v. Gregory*, 177 Wash. 465, 32 P. (2d) 560; *State ex rel. Trenholm v. Yelle*, 174 Wash. 547, 25 P. (2d) 569; *State ex rel. Govan v. Clausen*, 108 Wash. 133, 183 Pac. 115.

Furthermore, this action was brought under the declaratory judgment act (Laws of 1935, chapter 113; RCW 7.24) which should be liberally construed. Under it courts have entertained actions to test the constitutionality of a statute before it became effective. In *Berndson v. Graystone Materials Co.*, 34 Wn. (2d) 530, 209 P. (2d) 326, the court quoted with approval from Anderson, Declaratory Judgments (1st ed.), 192, § 68,[10] as follows:

" 'However, it is settled beyond peradventure of a doubt, notwithstanding some decisions apparently to the contrary, that a declaratory judgment action will lie to determine the validity of rights under a statute, even though no steps have been taken to enforce it, or that the effective date of the statute, when it would be subject to enforcement, has not arrived.' "

The court continued:

"The author cites, as authority for the above statement, and we think rightly, this court's opinion in *Acme Finance Co. v. Huse*, 192 Wash. 96, 73 P. (2d) 341, 114 A. L. R. 1345. See, also, *Pierce v. Society of Sisters*, 268 U. S. 510, 69 L. Ed. 1070, 45 S. Ct. 571, 39 A. L. R. 468, and *State ex rel. Yakima Amusement Co. v. Yakima County*, 192 Wash. 179, 183, 185, 73 P. (2d) 759."

Accord: *Department of Financial Institutions v. General Finance Corp.*, 227 Ind. 373, 86 N. E. (2d) 444, 10 A. L. R. (2d) 436; *Hyde Park Dairies v. City of Newton*, 167 Kan.

---

[10]Anderson, Declaratory Judgments (2d ed.), 146, § 73.

730, 208 P. (2d) 221; *Hoagland v. Bibb*, 12 Ill. App. (2d) 298, 139 N. E. (2d) 417.

The superior court was correct in determining that Laws of 1959, chapter 294, § 5, p. 1418, and Laws of 1959, chapter 294, § 3, p. 1413, were unconstitutional and enjoining their enforcement.

The judgment is affirmed.

MALLERY, DONWORTH, and OTT, JJ., concur.

WEAVER, C. J., and HILL, J., concur in the result.

FINLEY, J. (dissenting)—Chapter 294, § 3(1), Laws of 1959, requires that employers pay time and one half for all work (a) over eight hours per day, or (b) over forty hours per week. Section 12 of the act, however, provides that as to any employer and employment (involving interstate commerce) which are subject to the Federal Fair Labor Standards Act (29 U.S.C.A., § 201, *et seq.*), compliance with the Federal Act shall be deemed compliance with the requirements of the state act. The Federal Act requires payment of time and one half only for work in excess of forty hours per week. Thus, an employer whose business does not involve interstate commerce and, therefore, is not covered by the Federal Act is required to pay at the overtime rate for all work *over eight hours per day*, whereas the employer whose business, because of its involvement with interstate commerce, comes within the coverage of the Federal Act need not pay overtime, irrespective of the number of hours his employees work per day, *so long as he does not* work his employees *more than forty hours per week.*

Because of this result, the majority opinion holds that classification-wise the state act violates the state and federal constitutional prohibitions against the denial of equal protection. I do not agree.

Neither the majority opinion nor the briefs of any of the parties make any reference to the case of *Packer Corporation v. Utah* (1932), 285 U. S. 105, 76 L. Ed. 643, 52 S. Ct. 273, 79 A. L. R. 546. The state of Utah enacted a statute (Laws of Utah (1921), chapter 145, § 2, as amended by

chapter 52, § 2, Utah Laws of 1923 and chapter 92, Utah Laws of 1929) providing:

"It shall be a misdemeanor for any person, company, or corporation, to display on any bill board, street car sign, street car, placard, or on any other object or place of display, any advertisement of cigarettes, cigarette papers, cigars, chewing tobacco, or smoking tobacco, or any disguise or substitute of either, . . . *provided that nothing herein shall be construed to prohibit the advertising of cigarettes, cigarette papers, chewing tobacco, smoking tobacco, or any disguise or substitute of either in any newspaper, magazine, or periodical printed or circulating in the State of Utah."* (Italics mine.)

The italicized proviso was added in 1929, because the supreme court of Utah, in *State v. Salt Lake Tribune Publishing Co.* (1926), 68 Utah 187, 249 Pac. 474, 48 A. L. R. 553, had held the basic statute unconstitutional as violative of the federal commerce clause. The statute, as amended, was attacked on the ground that the exclusion of newspapers, periodicals, etc., from the coverage of the act constituted arbitrary classification. The United States Supreme Court rejected the argument that the classification was arbitrary and constitutionally invalid, saying:

"The classification alleged to be arbitrary was made in order to comply with the requirement of the Federal Constitution as interpreted and applied by the highest court of the State. *Action by a State taken to observe one prohibition of the Constitution does not entail the violation of another."* (Italics mine.) *Packer Corporation v. Utah, supra.*

Thus, if in the instant case the exclusion of interstate commerce type employment from the coverage of the state act was necessary in order to observe the prohibition against state regulation of interstate commerce implicit in the federal commerce clause, the classification, contrary to the views of the majority, is not arbitrary, but rather is perfectly proper; *i.e.,* constitutional. The majority, however, assert that it was not necessary for the state legislature to establish the particular classification. They point to a provision contained in the Federal Fair Labor Standards Act (29 U.S.C.A., § 218) which provides that compliance with

the Federal Act shall not excuse noncompliance with state laws "establishing a minimum wage higher than the minimum wage established under this chapter or a maximum work week lower than the maximum work week established under this chapter . . . " The majority reason that because of this provision in the Federal Act the state legislature could have subjected *interstate* employers covered by the Federal Act to the overtime pay requirements of § 3 of the state act, and that, because the state legislature failed to do this, its classification is arbitrary; *i.e.*, a denial of equal protection and hence constitutionally invalid.

I cannot agree with the disposition of this issue by the majority for two reasons. In the first place, I am not convinced that the state legislature (notwithstanding § 218 of the Federal Act) could have made all of the requirements of § 3 of the state act applicable to interstate commerce type employment. The reason becomes clear and, I believe, unanswerable upon a closer examination of § 218 of the Federal Act. The section provides that, with respect to employers engaged in interstate commerce, a state may establish (1) a minimum wage higher than the minimum wage established by the Federal Act, or (2) a maximum work week lower than the maximum work week prescribed by the Federal Act. But § 3 of the state act, while imposing a sanction against work in excess of forty hours per week the *same* as the Federal Act, in addition prescribes a maximum *work day* of eight hours. Since there is no mention in § 218 of the Federal Act of a *maximum work day* (as opposed to a maximum work week), how can it be said that the section gives permission to the states to prescribe a *maximum work day* for employees engaged in such interstate commerce type employment as is covered by the Federal Act? Section 218 *permits* imposition by the states of a more restrictive maximum work *week*. There is no *permission whatsoever* as to the imposition by a state of a maximum work *day*. The majority have cited no authority, and I have found none, demonstrating that the state legislature, pursuant to § 218 of the Federal Act, could have required those employers covered by the Federal Act (interstate

commerce employment) to comply with this maximum *eight hour work day* requirement of the state act. The principle announced in *Packer Corporation v. Utah, supra,* thus supports the action of our state legislature in not attempting to impose upon interstate commerce type employment the maximum eight hour *work day* feature of § 3 of the state act. This should demonstrate clearly, without further comment, the error in the logic strongly relied upon by the majority in concluding that the state act is unconstitutional. However, the position taken by the majority is, I think, untenable for a second and equally significant and convincing reason.

Assuming very tentatively and solely for the purpose of argument that somehow or other, by virtue of § 218 of the Federal Act, the state legislature might have made all the provisions of § 3 of the state act applicable to interstate commerce type employment, nothing expressed in the Federal Act requires the legislature to do so. Very clearly, the Federal Act could only be permissive—never mandatory. And yet, under the holding of the majority, in order for a state to enact constitutionally valid wage hour legislation, it *must* either (1) make its act applicable, alike or equally, to both interstate and intrastate commerce, or (2) enact legislation applicable solely to intrastate commerce, but containing only such wage hour requirements as are identical with those contained in the Federal Act. According to the majority opinion, solely because of the permission it deems has been granted to the states by § 218 of the Federal Act, a state cannot establish wage hour requirements applicable only to purely local employment which are in any way different from the requirements of the Federal Act. To do so, says the majority opinion, is to create an arbitrary classification in violation of the equal protection provisions of the state and federal constitutions.

I recognize that the Federal Congress in the exercise of its commerce clause powers may expressly permit what in effect amounts to state regulation of interstate commerce. *In re Rahrer* (1890), 140 U. S. 545, 35 L. Ed. 572, 11 S. Ct. 865. However, there is no indication in the *Rahrer* case that the Federal Congress by enacting legislation *permitting*

state regulation can inhibit, diminish, or circumscribe a state's police powers respecting wholly intrastate (local) commercial activity. Let us "render unto Caesar what is his," no less, but no more. The dichotomy of state and federal authority, or the sovereign prerogatives delineated by the commerce clause may have fallen into disuse or, perhaps, disrepute upon occasion, but I venture to assert it is worth remembering. Implicit in this dichotomy is the idea or consideration that intrastate (local) business should be regulated by local or state government. And just as properly, logically and constitutionally, interstate (nonlocal) business should be regulated by the national government.

On the other hand, there is the idea or consideration that intrastate (local) business should not be regulated more burdensomely than interstate (nonlocal) business. Inherently, this idea is engaging and certainly not lacking in merit. This, of course, is the idea emphasized by the majority in the instant case. Implemented by careful research, citation of authorities, and scholarly writing, the idea moves dramatically in the direction of invalidity of the state act. At the same time, however, it cuts cleanly across the first consideration above noted; for, carried to the extreme, it renders the validity of state regulation of intrastate commerce dependent wholly upon what the national government has done with respect to interstate commerce.

Thus, dependent upon which of these two ideas or considerations is emphasized or evaluated more significantly, state action such as the legislation before the court in the instant case may be said either to violate or not to violate the underlying constitutional prohibitions against denial of equal protection. Of course, where a state is powerless to enact regulatory legislation applicable to both intrastate and interstate commercial activity, its exclusion of interstate commerce from the coverage of such legislation is reasonable, and the resultant classification is not arbitrary. *Packer Corporation v. Utah, supra.* However, to say, as do the majority respecting § 218 of the Federal Act, that the picture is changed where the Federal Congress has seen fit to allow state regulation of interstate commerce is to subordinate the notion

that state governments, on the one hand, and the federal government, on the other hand, each has its respective sphere of sovereignty concerning the regulation of commercial activity to the idea or consideration that intrastate business should not be regulated more burdensomely than interstate business. This, I believe, as mentioned above, concedes that, notwithstanding the underlying concept of dual sovereignty, the validity of state regulation of intrastate commerce is wholly dependent upon what the federal government chooses to do with respect to interstate commerce. I am simply not willing to make such a drastic concession. In short, I am convinced that, even if § 218 of the Federal Act somehow can be read to permit application of the eight hour work day facet of § 3 of the state act, our legislature's decision not to act upon or implement this permission is not unreasonable or arbitrary. I do not believe that the Federal Congress, by opening the door to state regulation of a certain facet of interstate commerce, has the power to compel the state legislatures to curtail or to abandon their traditional sovereign power and function as to the regulation of purely local commercial activity. I have found no authority, and none is cited by the majority, in support of the proposition that Congress has such power. The majority opinion is a painstakingly, careful and scholarly effort which supports and justifies the result reached in the best traditions of legal methodology. But syllogistic phenomena are not infallible, nor the *be all and end all* of the judicial process.[1] What the federal government may do directly as to interstate commerce, or what it may permit the states to do, cannot, or at least should not, constitutionally restrict, inhibit, or even destroy state police power and authority respecting intrastate commerce.

---

[1] In *The Common Law*, p. 1, Justice Holmes stated: "The [actual] life of the law has not been logic; it has been experience. The felt necessities of the time, the prevalent moral and political theories, intuitions of public policy, avowed or unconscious, even the prejudices which judges share with their fellow-men, have had a good deal more to do than the syllogism in determining the rules by which law shall be governed."

In brief summary: I am convinced that, notwithstanding § 218 of the Federal Fair Labor Standards Act, that the Washington legislature could properly and constitutionally exclude from the coverage of the *eight hour* maximum *work day* provision of § 3 of the state act those employers covered by the Federal Act (1) for the reason that § 218 of the Federal Act, carefully read, does *not* permit this portion of the state act to be applied to such interstate employers, and (2) for the reason that, even if § 218 of the Federal Act did purport to permit such state action, the state's decision not to act upon or implement such permission is not unreasonable or arbitrary. Lastly, I cannot agree that Chapter 294, Laws of 1959, is unconstitutional for any of the other reasons stated by the majority. Consequently, I dissent.

ROSELLINI and HUNTER, JJ., concur with FINLEY, J.

